Ricky DAVIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–89–070–CR.

Court of Appeals of Texas,
Austin.

Aug. 8, 1990.

Ronald S. Gutierrez, Austin, for appellant.

Ronald Earle, Dist. Atty., William G. Reid, Asst. Dist. Atty., Austin, for appellee.

Before SHANNON, C.J., and CARROLL and ABOUSSIE, JJ.

CARROLL, Justice.

A jury convicted Ricky Davis of possession of cocaine, and the district court assessed punishment at twelve (12) years confinement in the penitentiary. Davis now complains that the district court erred when it denied his motion to suppress evidence. Because the district court properly denied Davis' motion, we will affirm the judgment of conviction.

## BACKGROUND

Austin Police Officer McKenzie responded to a "suspicious person" call from an anonymous source. The police department had received a call stating that a person with a gun was in the area of the 5300 block of Samuel Huston Avenue. McKenzie could not remember whether the dispatcher said the suspect was in a car or on foot. The back-up officer, Scales, also could not remember the dispatcher's call with certainty, but Scales thought that the dispatcher referred to a car.

Officer McKenzie arrived at the scene around 9:30 p.m. He noticed two men seated in a Pontiac Trans Am parked in front of a house. With his lights turned off, he pulled up behind the suspects' car. McKenzie approached these suspects because they were the only people at the location described by the police dispatcher.

McKenzie exited his squad car and began to walk toward the driver's side of the Pontiac. McKenzie observed that the two suspects glanced back at the officer and then at each other several times as McKenzie walked up to the car. The car was parked in a location with good lighting. McKenzie noted that this location is regularly frequented by drug dealers who sell drugs to people who drive up and briefly stop. As McKenzie approached, he noticed that the passenger, Davis, was clutching something in his left hand; Davis' hand was clenched in a fist next to the driver; and then Davis removed his clenched hand from this area. Because of the report of a possible gun, McKenzie attempted to keep a close watch on the suspects' hands.

Suspecting that he had interrupted a drug deal and fearing that the suspects might have a weapon, McKenzie asked the driver to step out of the car. The driver opened the door slightly, and the dome light came on. At that time, McKenzie saw Davis make a downward motion toward the floorboard with his clenched hand and noticed several packets containing a white substance on the passenger-side floorboard below Davis' legs.

Officer Scales arrived seconds later. Scales approached the passenger side of the Trans Am, and McKenzie again asked the driver to exit the vehicle. McKenzie took the driver to the rear of the car and asked Scales to remove Davis from the passenger side. While Scales watched the two suspects at the rear of the car, McKenzie retrieved the packets from the floorboard. McKenzie noted that he did not have to search the car; he had seen the packets in plain view after Davis moved his hand in a downward motion toward the floorboard. McKenzie then communicated in code to Officer Scales that they should arrest the two suspects. Davis immediately fled, apparently realizing that he was about to be arrested.

With this evidence in mind, we turn to Davis' sole point of error: the district court erred in denying Davis' motion to suppress evidence "because there was [sic] insufficient facts to corroborate the anonymous telephone tip that was relied upon to create a reasonable suspicion that Davis was committing a crime." After considering the totality of Davis' argument, we conclude that the dispositive issue presented requires us to decide whether Officer McKenzie possessed sufficient reasonable suspicion to justify the investigative detention of the two suspects that began when McKenzie asked the driver to step out of the car.

## INVESTIGATIVE STOPS AND DETENTIONS

Davis argues that Officer McKenzie made the investigative stop based solely upon an insufficiently corroborated anonymous tip. The State argues that during the course of a legitimate investigation, Officer McKenzie observed additional facts that not only corroborated the anonymous tip but also established the necessary basis for an investigative detention.

Circumstances short of probable cause for arrest may justify temporary detention for purposes of an investigation because a narrowly tailored investigation is not as intrusive upon personal liberty as an arrest. *Schwartz v. State*, 635 S.W.2d 545, 546 (Tex.Cr.App.1982); *see Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889

(1968); *Dickey v. State,* 716 S.W.2d 499, 503 n. 4 (Tex.Cr.App.1986). Occupants of an automobile are subject to a brief investigative stop, as are pedestrians. *Shaffer v. State,* 562 S.W.2d 853, 855 (Tex.Cr.App. 1978). When an officer is justified in believing a suspect is armed, the officer may take necessary measures to determine whether the suspect is in fact carrying a weapon and may neutralize the threat to the officer and others. *Terry,* 392 U.S. at 24, 88 S.Ct. at 1881.

■ In order to justify an investigative stop, the officer must have "specific articulable facts which, in light of his or her experience and personal knowledge, together with other inferences from those facts, would warrant" the stop. *Schwartz,* 635 S.W.2d at 547. The officer must also have a reasonable suspicion that activity out of the ordinary is occurring or has occurred, but if the activity is as consistent with innocent activity as with criminal activity, the stop and detention is unlawful. *Id.*

■ The reasonableness of an investigative detention turns on the totality of circumstances in each case. *United States v. Mendenhall,* 446 U.S. 544, 561, 100 S.Ct. 1870, 1880, 64 L.Ed.2d 497 (1980); *Shaffer,* 562 S.W.2d at 855. When analyzing the reasonableness of the detention, we look at several factors: (1) the public interest served by the detention; (2) the severity of the interference with individual liberty; and (3) the objective facts upon which the officer relied in light of his knowledge and expertise. *Brown v. Texas,* 443 U.S. 47, 50–51, 99 S.Ct. 2637, 2640–2641, 61 L.Ed.2d 357 (1979). Davis emphasizes that in our analysis we should focus on the anonymous tip.

## ANONYMOUS TELEPHONE TIPS

■ Different levels of police intrusion upon a citizen's liberty require different levels of constitutional analysis. An anonymous telephone call usually will justify the *initiation* of a police investigation. *Clemons v. State,* 605 S.W.2d 567, 570 (Tex.Cr.App.1980); *Mann v. State,* 525 S.W.2d 174, 176 (Tex.Cr.App.1975). At the other end of the spectrum, an anonymous tip alone will rarely, if ever, justify a warrantless search or arrest because the United States and Texas Constitutions require sufficient indicia of reliability. *See Clemons,* 605 S.W.2d at 570; *Alabama v. White,* — U.S. —, —, 110 S.Ct. 2412, 2416–2417, 110 L.Ed.2d 301 (1990); *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). We do not, however, need to decide whether Officer McKenzie had sufficient probable cause for a search or whether the packets of cocaine were justifiably seized pursuant to the "plain view" doctrine because the only issue properly before this Court is whether the anonymous tip, coupled with the facts observed by Officer McKenzie, justified the initial investigative detention.

If an anonymous tip has a fairly low degree of reliability, more information will be required to establish the requisite level of suspicion necessary to justify an investigative detention. *White,* — U.S. at —, 110 S.Ct. at 2416–2417; *cf. Ebarb v. State,* 598 S.W.2d 842, 844–845 (Tex.Cr.App.1980) (where defendant in car was detained and gun found in plain view, the evidence should have been suppressed as the detention was based *solely* on an anonymous tip and the court had no way of evaluating the reliability of the information from the anonymous source). For example, in *Glass v. State,* 681 S.W.2d 599, 602 (Tex.Cr.App. 1984), the Court of Criminal Appeals held that "nervousness" of the occupants alone did not authorize the police to stop the vehicle and order the suspects out of the car even though the car matched the description generated from an anonymous call with regard to a possible shooting near a particular intersection. Here we have more.

## CONCLUSION AND HOLDING

■ In contrast to the lack of subsequent extraordinary facts corroborating the anonymous tip in *Glass,* Officer McKenzie testified that when he approached the rear of the Trans Am, the driver and Davis glanced back at the officer and then at one another several times, and that Davis appeared to be clenching

something in his left hand as he moved it away from the driver. McKenzie pointed out that he observed unusual activity in the car at the location described by the anonymous caller—a location that McKenzie personally knew to be notorious for curb-side drug trafficking.

We note that the anonymous call here may not have been considered reliable; McKenzie could not even remember if the suspicious-person dispatch referenced a car. Nevertheless, the initial intrusion upon the suspects' liberty—McKenzie's request that the driver get out of the car— was relatively slight in the context of the circumstances present to the officer at the time of the detention. The car was located where a person with a gun had been reported; Officer McKenzie was alone at night in an area where he knew that curb-side drug sales regularly took place; he also knew from experience that drug dealers often carry weapons; and he saw suspicious movements consistent with the interruption of a "drug transaction" after he concluded that the suspects saw him approaching. *See Brown,* 443 U.S. at 50–51, 99 S.Ct. at 2640–2641; *Terry,* 392 U.S. at 24, 88 S.Ct. at 1881; *Schwartz,* 635 S.W.2d at 546–547; *Shaffer,* 562 S.W.2d at 855. We therefore hold that Officer McKenzie's suspicions that the suspects were engaged in criminal activity, and concern for his own safety, justified his initial approach of the car and his request that the driver step out of the vehicle.

Accordingly, we overrule Davis' point of error and affirm the judgment of conviction.