TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00221-CR







John Jay Davis, Jr., Appellant



v.



The State of Texas, Appellee








FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY


NO. 96-1537-1, HONORABLE KEVIN HENDERSON, JUDGE PRESIDING








 This is an appeal from an order deferring adjudication of guilt and placing appellant
John Jay Davis, Jr. on community supervision. See Tex. Code Crim. Proc. Ann. art. 44.01(j)
(West Supp. 1999); Dillehey v. State, 815 S.W.2d 623, 626 (Tex. Crim. App. 1991) (defendant
who receives deferred adjudication probation may appeal from ruling on pretrial motion).

 Appellant entered a plea of nolo contendere before the trial court to an information
charging him with the misdemeanor offense of possession of fenfluramine in an amount of less
than 28 grams. See Tex. Health & Safety Code Ann. § 481.117(a)(h) (West Supp. 1999). The
court rendered an order deferring adjudication of guilt and placing appellant on community
supervision for 24 months subject to certain conditions.


Point of Error


 In a single point of error, appellant contends that the trial court erred by denying
his pretrial motion to suppress evidence obtained by an illegal warrantless detention and arrest.
Appellant claims that the initial detention of the vehicle in which he was a passenger violated the
Fourth Amendment to the United States Constitution applicable to the states by virtue of the
Fourteenth Amendment. See Mapp v. Ohio, 367 U.S. 643, 655-56 (1961). Appellant presents
only a federal question. We will sustain the point of error and reverse the judgment of conviction.


Facts


 The record at the suppression hearing reflects that Georgetown Police Officer 
Timothy Allen Stengle was on patrol on March 3, 1996, about 6:00 p.m. on Highway 29 when
he received a dispatch. Stengle testified that the dispatcher reported having received information
from a caller on a "cell phone" about a full-sized black Chevy Blazer with dealer's tags 5D1180
in the area of mile post 259 on I-35 driving in a northbound direction; that the vehicle was
occupied by three white males; that the vehicle was being driven recklessly--"that the vehicle has
passed the caller on the shoulder of the roadway back in Round Rock"; and that the occupants
were "possibly smoking marijuana."

 Stengle proceeded to I-35 and pulled off to the side of the road between mile posts
261 and 262. He then received a radio report from Officer Pitcher that a black Blazer was headed
northbound on I-35 in the direction of Stengle's position. As a full-sized black Blazer with three
white males passed Stengle's position, he began to follow and confirmed the dealer tag number
as given by the dispatcher. Using his police unit's overhead lights, Stengle pulled the Blazer over
north of Williams Drive at mile post 263 on I-35.

 Stengle acknowledged that he observed no traffic offense being committed and saw
no violation of law; he stopped the Blazer solely on the basis of the information in the dispatch. 
He did not know the anonymous caller and had never seen or talked to such person. The unknown
informant had not given a name or address, although it was the policy of the Georgetown Police
Department to ask for identification. Office Stengle acknowledged that no one stopped at the
scene of the detention and identified himself or herself as the caller.

 Stengle testified that after the Blazer stopped, the driver got out and came to the
rear of the vehicle to meet the officer. The driver was ordered to return to the vehicle and get
back inside. Stengle explained that this was a policy he followed with traffic stops. After the
driver complied with the officer's instruction, Stengle approached the driver's window and smelled
the overwhelming odor of marihuana. (1) About this time, Officer Pitcher arrived on the scene. 
Stengle removed the driver, who was identified as Bryon Harlan, from the car. Officer Pitcher
then removed appellant who was the right front seat passenger. A pat-down search of appellant
revealed a pipe in one of his socks that the officers considered to be narcotic paraphernalia. Eric
Bugen was removed from the back seat. A search of the back seat revealed marihuana on top of
a black bag under a shirt and boxer shorts. The marihuana was believed to belong to Bugen. In
the luggage storage area, a shaving kit was found that contained cocaine, narcotic paraphernalia,
and a razor blade. Harlan admitted the cocaine was his. At the jail, two pills were found in
appellant's left pocket. These pills form the basis of the instant prosecution.

 Officer Frederick Pitcher testified that on the date in question he was a Georgetown
police officer; that about 6:00 p.m., he heard the dispatch which referred to the caller as a female;
and that the dispatch said the caller believed that they (three while males) "were smoking 
something referred to as marijuana." Pitcher revealed that he then drove south on I-35 and about
a minute later observed a black Blazer northbound on I-35. He then radioed Officer Stengle of
his observation. Officer Pitcher related that the dispatch referred only to a female caller. No
name, age, or location of the caller was given.

 The two officers were the only witnesses at the suppression hearing. The dispatcher
did not testify and there was no evidence as to whether a tape had been made of the cellular phone
call or whether any efforts had been made to locate the caller.

 At the conclusion of the hearing, the trial court overruled the motion to suppress
evidence obtained as a result of an illegal detention. The trial court made no separate findings of
fact.


Standard of Review


 In reviewing a trial court's ruling on a motion to suppress evidence, an appellate
court must determine the applicable standard of review. See Guzman v. State, 955 S.W.2d 85,
87 (Tex. Crim. App. 1997). Guzman has recently clarified the standard of review to be used. In
Loserth v. State, 963 S.W.2d 770, 771 (Tex. Crim. App. 1998), the court made clear that Guzman
is to be applied to all motions to suppress evidence. Although great weight should be given to the
inferences drawn by trial judges and law enforcement officers, determination of reasonable
suspicion and probable cause should be reviewed de novo on appeal. See Guzman, 955 S.W.2d
at 87 (citing Ornelas v United States, 517 U.S. 690 (1996)); (2) Hunter v. State, 955 S.W.2d 102,
105 (Tex. Crim. App. 1997) (question of whether defendant was "detained" under Fourth
Amendment is to be reviewed de novo); State v. Ensley, 976 S.W.2d 272, 274-75 (Tex.
App.--Houston [14th Dist.] 1998, pet. ref'd).


The Applicable Law--Reasonable Suspicion


 Terry v. Ohio, 392 U.S. 1, 19 (1968) recognized three categories of police-civilian
interaction: (1) encounter; (3) (2) temporary detention or stop; and (3) arrest. (4) See also State v.
Simmang, 945 S.W.2d 219, 222-23 (Tex. App.--San Antonio 1997, no pet.); Francis v. State,
896 S.W.2d 406, 408-09 (Tex. App.--Houston [1st Dist.] 1995), pet. dism'd improvidently
granted, 922 S.W.2d 176 (Tex. Crim. App. 1996). Only detentions and arrests amount to
"seizures" of persons. See Terry, 392 U.S. at 19.

 In the instant case, we are confronted with a detention or stop arising out of an
anonymous tip. Law enforcement officers may stop and briefly detain persons suspected of
criminal activity on less information than is constitutionally required for probable cause to arrest. 
See Terry, 392 U.S. at 22; Garza v. State, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989). To
justify the intrusion, the officer must have specific articulable facts which, in light of his
experience and personal knowledge, together with inferences from those facts, would reasonably
warrant the intrusion on the freedom of the citizen detained for further investigation. See Comer
v. State, 754 S.W.2d 656, 657 (Tex. Crim. App. 1986); Johnson v. State, 658 S.W.2d 623, 626
(Tex. Crim. App. 1983); Simmang, 945 S.W.2d at 222. These "specific articulable facts" must
create in the individual officer's mind a reasonable suspicion that "some activity out of the
ordinary is occurring or had occurred, some suggestion to connect the detained person with the
unusual activity, and some indication that the activity is related to a crime." Johnson, 658 S.W.2d
at 626. Thus, such a detention requires the officer to have a reasonable suspicion that the person
detained is involved in criminal activity. See Royer, 460 U.S. at 497; Harris v. State, 913 S.W.2d
706, 708 (Tex. App.--Texarkana 1995, no pet.). The officer making a Terry stop must be able
to articulate something more than an inchoate and unparticularized suspicion or hunch. See United
States v. Sokolow 490 U.S. 1, 7 (1989); Williams v. State, 621 S.W.2d 609, 612 (Tex. Crim.
App. 1981).

 The reasonableness of an investigative detention turns on the totality of the
circumstances in each case. See Mendenhall, 446 U.S. at 561 (Powell, concurring); Shaffer v.
State, 562 S.W.2d 853, 855 (Tex. Crim. App. 1978); State v. Sailo, 910 S.W.2d 184, 188 (Tex.
App.--Fort Worth 1995, pet. ref'd); Davis v. State, 794 S.W.2d 123, 125 (Tex. App.--Austin
1990, pet. ref'd). Reasonable suspicion is dependent upon both the content of the information
possessed by the police and its degree of reliability. See Alabama v. White, 496 U.S. 325, 330
(1990). "Both factors--quantity and quality--are considered in the totality of the
circumstances--the whole picture . . . must be taken into account when evaluating whether there
is reasonable suspicion." Id. (citing United States v. Cortez, 449 U.S. 411, 417 (1981)).

 We observe that the "as consistent with innocent activity as with criminal activity"
construct is no longer a viable test in determining reasonable suspicion for temporary detention. 
See Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997) (overruling a number of earlier
cases).

 An anonymous tip usually will justify the initiation of a police investigation. See
Clemons v. State, 605 S.W.2d 567, 570 (Tex. Crim. App. 1990); Mann v. State, 525 S.W.2d 174,
176 (Tex. Crim. App. 1975); Simmang, 945 S.W.2d at 223. However, an anonymous tip or
telephone call alone rarely will establish the requisite level of suspicion necessary to justify an
investigative detention. See White, 496 U.S. at 329; (5) Reynolds v. State, 962 S.W.2d 307, 311
(Tex. App.--Amarillo 1998, pet. ref'd); Parish v. State, 939 S.W.2d 201, 203 (Tex.
App.--Austin 1997, no pet.). Normally, there must be some further indicia of reliability--
additional facts from which a police officer may reasonably conclude that the tip is reliable and
a detention is justified. See White, 496 U.S. at 329; Davis, 794 S.W.2d at 125. To justify a
police officer's conclusion that a crime has been or is being committed, the officer generally
cannot rely alone on a police broadcast of an anonymous phone call to establish probable cause
or reasonable suspicion. Cf. Wright v. State, 932 S.W.2d 572, 576 (Tex. App.--Tyler 1995, no
pet.) (citing Rojas v. State, 797 S.W.2d 41, 44 (Tex. Crim. App. 1990);and Colston v. State, 511
S.W.2d 10, 12 (Tex. Crim. App. 1974)).

 When an investigative detention is based solely on an anonymous tip, the court
often has no way of evaluating the reliability of the information from the anonymous source. See
Ebarb v. State, 598 S.W.2d 842, 844-45 (Tex. Crim. App. 1980); Davis, 794 S.W.2d at 125. 
If an anonymous tip has a low degree of reliability, more information will be required to establish
the requisite level of suspicion to justify an investigative detention. See White, 496 U.S. at 330. 
An anonymous tip may, however, be sufficient if it contains sufficient "indicia of reliability" or
if some aspects of it are sufficiently corroborated. Id. at 329-32.

 An officer's prior knowledge, his experience, and his corroboration of the details
of the tip may be considered in giving the anonymous tip the weight it deserves. Id. at 329-30. 
Mere corroboration of details, however, that are easily obtainable at the time the information is
provided will not support a finding of probable cause nor furnish the basis for reasonable
suspicion. See Gates, 462 U.S. at 245.

 In Glenn v. State, 967 S.W.2d 467, 470 (Tex. App.--Amarillo 1998, pet. granted),
the court found that "the following are significant in determining whether reasonable suspicion
exists for a temporary detention based upon information from an unknown tipster: (1) accurately
predicting future behavior of third parties, id.; (2) corroboration of a detail linking the accused
to the stated criminal activity, Ramirez v. State, 658 S.W.2d 808 (Tex. App.--Corpus Christi
1983), aff'd, 672 S.W.2d 480 (Tex. Cr. App. 1984); and (3) a particularized and objective reason
to suspect the accused. Davis v. State, 829 S.W.2d 218, 221 (Tex. Cr. App. 1992).


Anonymous Tip--Instant Case


 The tip in the instant case was by an unidentified female caller of unknown veracity. 
The anonymous tip did give a description of the vehicle and its dealer's tag number but gave no
description of the offending individual or individuals as to age, physical appearance, or clothing. 
They were described as "three white males" which would fit a large segment of the population. 
The tip placed the black Blazer at milepost 259 on I-35, and within one or two minutes after
receiving the dispatch, Officer Pitcher observed a black Blazer near mile post 260 and Officer
Stengle observed the described vehicle with three white males between mileposts 261 and 262 on
I-35. When Officer Stengle stopped the Blazer, he corroborated the tip as to the vehicle's
description, the "white male" occupants, and that the vehicle was in the general vicinity. The
mere corroboration of facts that are easily obtainable at the time the information is provided,
however, will not furnish reasonable suspicion as a basis for a stop. Anyone with enough
knowledge about a given person to make him the target of a prank, or to harbor a grudge against
him, will certainly be able to formulate an anonymous tip hoping to initiate an investigation and
perhaps a forcible stop or detention. This was the concern expressed by Justice Stevens. See
White, 496 U.S. at 333 (Steven, J. dissenting).

 Although there was corroboration of the easily obtainable facts, was there
corroboration of the details linking appellant and his companions to the stated criminal activity? 
The unknown caller did relate that the Blazer was being driven "recklessly" as it had passed the
caller on the shoulder of the roadway "back in Round Rock." These facts within the tip would
indicate personal knowledge of the tipster, but leaves vague the time, the location of the roadway
in Round Rock, whether the tipster was in a vehicle, and other circumstances supporting the stated
conclusion of "reckless driving." (6) The tipster also stated that the occupants of the Blazer were
"possibly smoking marijuana." If this statement was based on personal observations rather than
some other source, the tipster did not indicate how she was able to make this determination. The
use of "possibly" indicated her uncertainty.

 Giving the anonymous tip a common sense reading and considering it in the most
favorable light, we do not find any corroboration of details linking appellant and his companions
to the criminal activity alleged. Officer Stengle stated that his stop of the Blazer and its occupants
was based solely upon the anonymous tip. At the time of the stop, he observed no traffic offense
being committed nor any violation of law. There was nothing to link the occupants to the criminal
activity reported.

 An inadequate anonymous tip may be supported by an officer's prior knowledge
and experience. Officer Stengle was an experienced officer, but he did not state that he was
familiar with appellant, his companions, or the vehicle. Stengle did not testify that he was aware
of any criminal records, concerning the occupants of the Blazer, or that the location was a high
crime area, or where narcotics users are frequently found, or where drivers usually engaged in
reckless driving. Nothing in Officer Stengle's or Officer Pitcher's experience and knowledge
aided the corroboration of the anonymous tip.


Conclusion


 Under the totality of the circumstances, the anonymous tip, uncorroborated as to
its significant aspects by independent police work, did not exhibit sufficient indicia of reliability
to justify the investigative stop of the vehicle in which appellant was a passenger. The evidence
appellant sought to suppress was the fruit of the unlawful detention. See Wong Sun v. United
States, 371 U.S. 471, 488 (1963).

 Giving almost total deference to the fact findings of the trial court but reviewing
de novo the legal determination of reasonable suspicion as we are required to do, see Guzman, 955
S.W.2d at 87, we conclude that the trial court erred in overruling the motion to suppress evidence. 
Appellant's sole point of error is sustained.

 The judgment of conviction is reversed and the cause is remanded to the trial court.



 

 John F. Onion, Jr., Justice

Before Justices Jones, Patterson and Onion*

Reversed and Remanded

Filed: March 25, 1999

Publish












* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The statutory spelling of the substance is "marihuana." See Tex. Health & Safety Code
Ann. § 481.002(26) (West 1992) & §§ 481.120, 481.121, 481.122 (West Supp. 1999). The
common spelling of the word is "marijuana" which is frequently used in trial court records.
2. In Ornelas, the Supreme Court stated that "the legal rules for probable cause and
reasonable suspicion acquire content through application. Independent review is therefore
necessary if appellate courts are to maintain control of, and to clarify the legal principles." 
Ornelas, 517 U.S. at 697.
3. Police officers do not violate the Fourth Amendment by merely approaching an
individual in public to ask questions. See Florida v. Royer, 460 U.S. 491, 498 (1983). This
encounter does not require any justification whatsoever on the part of any officer. See United
States v. Mendenhall, 446 U.S. 554, 555 (1980).
4. An arrest must be justified by probable cause to believe the suspect has committed an
offense. See Henry v. United States, 361 U.S. 98, 103 (1959); Amores v. State, 816 S.W.2d 407,
416 (Tex. Crim. App. 1991). Probable cause is defined in Beck v. Ohio, 379 U.S. 89, 91 (1964);
Amores, 816 S.W.2d at 411; Simmang v. State, 945 S.W.2d 219, 223 n.4 (Tex. App.--San
Antonio 1997, no pet.).
5. The Supreme Court in White, 496 U.S. at 329, wrote:


The opinion in Gates [v. Illinois, 462 U.S. 213 (1983)] recognized that an
anonymous tip alone seldom demonstrates the informant's basis of knowledge
or veracity inasmuch as ordinary citizens generally do not provide extensive
recitations of the basis of their everyday observations and given that the
veracity of persons supplying anonymous tips is "by hypothesis largely
unknown, and unknowable." Id. at 237, 76 L. Ed. 2d 527, 103 S. Ct. 2317. 
This is not to say that an anonymous caller could never provide the reasonable
suspicion necessary for a Terry stop.
6. See Tex. Transp. Code Ann. § 545.401 (West 1999).



engaged in
reckless driving. Nothing in Officer Stengle's or Officer Pitcher's experience and knowledge
aided the corroboration of the anonymous tip.


Conclusion


 Under the totality of the circumstances, the anonymous tip, uncorroborated as to
its significant aspects by independent police work, did not exhibit sufficient indicia of reliability
to justify the investigative stop of the vehicle in which appellant was a passenger. The evidence
appellant sought to suppress was the fruit of the unlawful detention. See Wong Sun v. United
States, 371 U.S. 471, 488 (1963).

 Giving almost total deference to the fact findings of the trial court but reviewing
de novo the legal determination of reasonable suspicion as we are required to do, see Guzman, 955
S.W.2d at 87, we conclude that the trial court erred in overruling the motion to suppress evidence. 
Appellant's sole point of error is sustained.

 The judgment of conviction is reversed and the cause is remanded to the trial court.



 

 John F. Onion, Jr., Justice

Before Justices Jones, Patterson and Onion*

Reversed and Remanded

Filed: March 25, 1999

Publish












* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The statutory spelling of the substance is "marihuana." See Tex. Health & Safety Code
Ann. § 481.002(26) (West 1992) & §§ 481.120, 481.121, 481.122 (West Supp. 1999). The
common spelling of the word is "marijuana" which is frequently used in trial court records.
2. In Ornelas, the Supreme Court stated that "the legal rules for probable cause and
reasonable suspicion acquire content through application. Independent review is therefore
necessary if appellate courts are to maintain control of, and to clarify the legal principles." 
Ornelas, 517 U.S. at 697.
3. Police officers do not violate the Fourth Amendment by merely approaching an
individual in public to ask questions. See Florida v. Royer, 460 U.S. 491, 498 (1983). This
encounter does not require any justification whatsoever on the part of any officer. See United
States v. Mendenhall, 446 U.S. 554, 555 (1980).
4. An arrest must be justified by probable cause to believe the suspect has committed an
offense. See Henry v. United States, 361 U.S. 98, 103 (1959); Amores v. State, 816 S.W.2d 407,
416 (Tex. Crim. App. 1991). Probable cause is defined in Beck v. Ohio, 379 U.S. 89, 91 (1964);
Amores, 816 S.W.2d at 411; Simmang v. State, 945 S.W.2d 219, 223 n.4 (Tex. App.--San
Antonio 1997, no pet.).
5. The Supreme Court in White, 496 U.S. at 329, wrote:


The opinion in Gates [v. Illinois, 462 U.S. 213 (1983)] recognized that an
anonymous tip alone seldom demonstrates the informant's basis of knowledge
or veracity inasmuch as ordinary citizens generally do not provide extensive
recitations of the basis of their everyday observations and given that the
veracity of persons supplying anonymous tips is "by hypothesis largely
unknown, and unknowable." Id. at 237, 76 L. Ed. 2d 527, 103 S. Ct. 2317. 
This is not to say that an anonymous caller could never provide the reasonable
suspicion necessary for a Terry stop.
6.