# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00126-CR

**Steven Scott Rose, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 6 OF TRAVIS COUNTY
### NO. 594018, HONORABLE JAN BRELAND, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant appeals his conviction for the misdemeanor offense of operating a motor vehicle while intoxicated. Appellant waived trial by jury and entered a plea of nolo contendere before the trial court. The trial court assessed punishment at confinement in the county jail for 180 days and a fine of $2,000. The trial court suspended the imposition of the sentence and placed appellant on community supervision for eighteen months subject to certain conditions.

### Point of Error

In a single point of error, appellant contends that the "trial court erred in overruling appellant's motion to suppress for the reason that the arresting officer was not justified in stopping appellant's car."

## Preservation of Error

At the outset, we are confronted with the State's argument that appellant failed to preserve error because there was no ruling on the pretrial suppression motion. The State urges that at the conclusion of the suppression hearing there was no oral or written ruling on the motion to suppress evidence. In the record is a certification by the trial court that the instant case was "a plea-bargain case, but matters were raised by written motion filed and ruled on before trial and not withdrawn or waived and the defendant has the right of appeal." *See* Tex. R. App. P. 25.2(d). The State takes the position that the certification by the trial court fails to specify that the trial court overruled the pretrial motion to suppress evidence and without an adverse ruling under Rule 33.1[1] on the suppression motion, any error was waived. *Powell v. State*, 897 S.W.2d 307, 310 (Tex. Crim. App. 1994).

At the conclusion of the pretrial hearing on the motion to suppress, the record reflects:

THE COURT:      Mr. Howeth, where do you want to go from here?

MR. HOWETH
[defense counsel]:      I guess I want to see the videos. We tried to get the video and somehow it didn't show up. Now we know it was there. I will probably do a little bit better if I can get that up, so whatever the Court says. I suppose this can go to a jury trial if it gets to it. I think if I can see the video and the State can see the video, we can agree or disagree or something and then we can narrow it down a little bit so we don't have as much court time.

MR. LASTOVICA
[prosecutor]:      I'm confident that we'll disagree, Your Honor.

---

[1] *See* Tex. R. App. P. 33.1(a)(1)(A)(B)(2)(A)(B).

MR. HOWETH:          I could be more specific about what we disagree on once I've seen the video, Your Honor.

THE COURT:           Okay. Why don't we put it on the jury docket and then stay in touch with Mr. Lastovica. If he gives you a hard time about letting you watch that video, you let me know. I'll discipline him appropriately.

MR. HOWETH:          I think that's good. I'm going to go along with the game plan altogether.

MR. LASTOVICA:       I heard every word, Your Honor. Especially what you said, Your Honor.

THE COURT:           Very good.


No oral or written order followed the hearing, but it appears the case was placed on the jury docket. There was no court reporter's record made of appellant's subsequent plea of nolo contendere before the trial court, which might have reflected the earlier ruling on the suppression motion. At the time of the notice of appeal, the trial court certified that a ruling had been made on a pretrial motion, a certification not likely to have been made if the ruling had been to grant the motion. Under the totality of the circumstances, we conclude that the record supports an implicit adverse ruling on the suppression motion. *See* Tex. R. App. P. 33.1(a)(2)(A). We reject the State's waiver argument.

**Facts**

The only evidence before us is the one-witness suppression hearing. *Cf. Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). City of Lakeway Police Officer Gabriel Zambrano testified that on August 13, 2001, he was informed by the police dispatcher that a

3

telephone call had been received from "a driver on the roadway" that there was a black Ford pickup truck with a headache rack being driven recklessly "possibly a drunken driver, swerving from side to side." The caller was an unidentified tipster. Officer Zambrano was nearby on Highway 620, and the vehicle in question was traveling in his direction. Zambrano spotted the black Ford pickup truck fitting the description given. At first, there were two cars between the officer's marked patrol vehicle and the pickup truck. Zambrano saw the pickup truck being driven in an erratic manner swerving from side to side. The pickup was in the right lane of two lanes of traffic flowing in the same direction. The oncoming traffic was in two lanes going in the opposite direction on the four-lane highway.

When Zambrano got his vehicle directly behind the pickup truck, he received another message from the dispatcher that the caller, who had remained in communication, had stated that the officer was now behind the truck reported. At this point, Zambrano turned on his mobile video. Thereafter, the driver of the pickup veered left out of his traffic lane six times and veered right over the "fog line" onto the shoulder five times. On one occasion, the truck left its traffic lane completely and went over onto the improved shoulder. Officer Zambrano turned on his vehicle's overhead lights and his siren. Officer Ed Lindell, also in a marked patrol vehicle, came upon the left side of the pickup truck with overhead lights flashing. The pickup truck traveled a mile or so before the officers were able to stop the truck. Zambrano identified appellant as the driver of the truck. Appellant's counsel stated for the record that at the time appellant was not contesting the probable cause for the arrest "for DWI."

4

Zambrano testified that the stop was made at 5:51 p.m. during the rush-hour traffic on Highway 620, which was a congested or heavily traveled traffic artery. He was certain there were other vehicles adjacent to the pickup truck at the time in question. Zambrano stated that appellant's manner of driving posed a danger to himself and others. Appellant's counsel elicited the fact that there had been no accident or collision that the officer observed.

## Discussion

Appellant argues in his single point of error that the trial court erred in overruling his motion to suppress evidence[2] because the arresting officer was not justified in stopping appellant's vehicle as there was no reasonable suspicion for appellant's detention. Specifically, appellant contends that the driving behavior involved did not affect the safety of other motorists and as such, did not violate any traffic law.

While a police officer must have probable cause for a full custodial arrest, a mere stop of an individual for the purposes of investigation does not require such substantial justification. *Terry v. Ohio*, 392 U.S. 1, 22-26 (1968); *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989); *State v. Fudge*, 42 S.W.3d 226, 229 (Tex. App.—Austin 2001, no pet.). Law enforcement

---

[2] The appropriate standard of review for a suppression ruling is a bifurcated review, giving almost total deference to the trial court's findings of fact, but conducting a *de novo* review of the court's application of the law to those facts. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997).

officers may stop and briefly detain persons suspected of criminal activity if the circumstances upon which the officers rely objectively support a reasonable suspicion that the person detained actually is, has been, or soon will be engaged in criminal activity. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997); *McQuarters v. State*, 58 S.W.3d 250, 255 (Tex. App.—Fort Worth 2001, pet. ref'd).

> "Reasonable suspicion" exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity. This standard is an objective one: there need only be an objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant. The reasonable suspicion determination is made by considering the totality of the circumstances.

*Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001) (footnotes omitted).

The reasonableness of a temporary stop turns on the "totality of the circumstances" in each case. *Illinois v. Gates*, 662 U.S. 213, 230-31 (1983); *Fudge*, 42 S.W.3d at 229; *Davis v. State*, 794 S.W.2d 123, 125 (Tex. App.—Austin 1990, pet. ref'd). Reasonable suspicion, like the greater requirement of probable cause, is dependent upon both the content of the information possessed by the police and its degree of reliability. *Alabama v. White*, 496 U.S. 325, 330 (1990). "Both factors—quantity and quality—are considered in the totality of the circumstances—the whole picture . . . must be taken into account when evaluating whether there is reasonable suspicion." *Id.*; *see also Carmouche v. State*, 10 S.W.3d 323, 328-29 (Tex. Crim. App. 2000).

A tip by an unnamed informant of undisclosed reliability standing alone rarely will establish the requisite level of reasonable suspicion necessary to justify an investigative detention

6

or stop. *Floreda v. J. L.*, 529 U.S. 266, 269 (2000). In the instant case, unlike *Fudge*, Officer Zambrano did not rely alone upon a tip by an unnamed informant. Acting upon the tip, Zambrano independently observed acts upon which to lawfully base the stop, all of which constituted factors in assaying the totality of the circumstances. Not only was the tipster's information corroborated to the extent the temporary detention was justified on that basis alone, but Officer Zambrano personally observed conduct that caused him to reasonably suspect that a crime had been, was being, or was about to be committed. *See Sailo v. State*, 910 S.W.2d 184, 188-89 (Tex. App.—Fort Worth 1995, pet. ref'd).

Appellant argues that the stop was not justified because the evidence failed to show that he violated a traffic law. Appellant claims that Zambrano's testimony showed the sole basis for the stop was appellant's failure to maintain a single marked lane. Tex. Transp. Code Ann. § 545.060(a) (West 1999), and that none of his actions on the road with his pickup truck were unsafe as required by the statute.[3]

---

[3] Section 545.060(a) provides:

    (a) An operator on a roadway divided into two or more clearly marked lanes for traffic:

        (1) shall drive as nearly as practical entirely within a single lane; and

        (2) may not move from the lane unless that movement can be made safely.

Tex. Transp. Code Ann. § 545.060(a) (West 1999).

7

The State contends that not only section 545.060(a) was involved, but section 545.058(a) of the Transportation Code (driving on improved shoulder)[4] must be considered in the totality of the circumstances.

There is no requirement that a particular statute be violated in order to give rise to reasonable suspicion. *Gajewski v. State*, 944 S.W.2d 450, 452 (Tex. App.—Houston [14th Dist.] 1997, no pet.). If an officer has a reasonable basis for suspecting that a person has committed a traffic offense, the officer may legally initiate a traffic stop. *McVickers v. State*, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993); *Texas Dept. of Public Safety v. Chang*, 994 S.W.2d 876, 877 (Tex. App.—Austin 1999, no pet.). The State is not required to show a traffic offense was actually committed but only that the officer reasonably believed a violation was in progress. *Texas Dept. of*

---

[4] (a) An operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only:

   (1) to stop, stand, or park;

   (2) to accelerate before entering the main traveled lane of traffic;

   (3) to decelerate before making a right turn;

   (4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;

   (5) to allow another vehicle traveling faster to pass;

   (6) as permitted or required by an official traffic-control device; or

   (7) to avoid a collision.

*Id*. § 545.058(a) (West 1999).

8

*Public Safety v. Fisher*, 56 S.W.3d 159, 163 (Tex. App.—Dallas 2001, no pet.); *Valencia v. State*, 820 S.W.2d 397, 400 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd); *see also McQuarters*, 58 S.W.3d at 255.

The State only needed to elicit testimony that Officer Zambrano knew sufficient facts to reasonably suspect that appellant had violated a traffic law. *McQuarters*, 58 S.W.3d at 255 (citing *Garcia*, 43 S.W.3d at 530). Assuming Officer Zambrano's testimony may not have established a reasonable suspicion that appellant violated a traffic law, it did raise sufficient facts to justify a stop based on reasonable suspicion that appellant was intoxicated while driving. *McQuarters*, 58 S.W.3d at 255; *Gajewski*, 944 S.W.2d at 453. The officer was justified in stopping appellant. The trial court did not abuse its discretion in overruling the pretrial suppression motion. The point of error is overruled.

The judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Chief Justice Law, Justices Kidd and Onion[*]

Affirmed

Filed: August 14, 2003

Do Not Publish

[*]   Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).