Juan Luis GARCIA, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–97–00811–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 7, 1999.

---

Mary Samaan, Houston, for appellants.

Kevin Patrick Yeary, Houston, for appellees.

Panel consists of Justices FOWLER, EDELMAN, and BAIRD.*

## CORRECTED OPINION

CHARLES F. BAIRD, Justice.

Our opinion of August 19, 1999 is withdrawn, and we issue this corrected opinion.

After his pretrial motion to suppress evidence was overruled, appellant pleaded guilty to possessing more than fifty, but less than 2,000 pounds of marijuana. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(5) (Vernon Supp.1999). Pursuant to a plea bargain agreement, the district court assessed punishment at imprisonment for five years. In his notice of appeal, appellant properly preserved for appellate review the overruling of his motion to suppress. *See* TEX.R.APP. P. 25.2(b)(3)(B). We reverse and remand.

## I. Historical Facts

On the morning of December 12, 1996, Police Officer Larry Candelari of the narcotics division of the Pasadena Police Department received a telephone call from the Pasadena Police Department dispatcher. The dispatcher related that he had received an anonymous telephone call stating there was a quantity of marijuana in a trailer house at 2151 Shaver, No. 24 in Pasadena. Additionally, the reportee stated there was a red truck and a red vehicle at that location. As Candelari was not on duty, he contacted his supervisors and sought permission to establish surveillance at that location. Candelari received permission and proceeded to the location, which he knew to be a trailer park containing 40 to 50 trailers.

Candelari arrived at the trailer park at approximately 7:00 a.m. and observed a red pickup truck and a blue Oldsmobile parked in the driveway of trailer 24. Approximately 20 minutes later, Candelari saw a man exit trailer 24 and place a package/object into the pickup truck.[1] Candelari described the package/object as about a foot long, about ten inches wide and dark in color. From his experience and training, Candelari had seen bricks of marijuana of that approximate size. The man then placed a small child into the pickup truck and got into the driver's seat. An older man got into the passenger seat. The pickup truck left the trailer park.

Candelari followed the pickup truck and attempted to have it stopped by a marked Pasadena police unit. Because the truck drove out of Pasadena and into South Houston, however, Candelari asked that a South Houston police unit stop the pickup truck. A South Houston Police Officer had stopped the pickup truck when Candelari arrived. Candelari identified appellant as the driver of the truck. The package/object which Candelari suspected to be a brick of marijuana, was determined to be a football. Candelari asked appellant for consent to search his residence. Appellant agreed and signed a consent to search form. Although somewhat confused about how they returned to the trailer house, Candelari recalled that appellant was transported to trailer 24 in a Pasadena Police unit; the other man and the child followed in the pickup truck. In the search, Candelari recovered a sufficient quantity of marijuana in the trailer and the blue Oldsmobile to support the weight alleged in the indictment.

On cross-examination, Candelari stated that the anonymous tip neither named nor described appellant. The anonymous tip did not indicate any basis for the informant's knowledge about the marijuana. The anonymous tip did not give the make,

---

* Former Judge Charles F. Baird sitting by assignment.

1. On direct examination, Candelari referred to the item as a package, but on cross-examination he referred to the item as an object.

model, year, any distinguishing characteristics, or license plate number of the pick-up truck or vehicle. The anonymous tip did not predict any future activity. Candelari stated that the reason appellant was stopped was "based upon that information that I had and the package that I saw [appellant] loading in the car. I had reason to believe that might be marijuana."

The State's second and final witness was South Houston motorcycle patrolman D.L. Sills. According to Sills, he was advised by his dispatcher "that Pasadena needed somebody to stop a vehicle." Responding to this request, Sills stopped appellant. After obtaining appellant's driver's license, Sills told appellant that a Pasadena Police officer wanted to talk to him.

Defense counsel attempted to call appellant to testify solely for the purpose of the motion to suppress. The trial court, however, ruled that the State's cross-examination would not be restricted. Upon receiving this ruling, the defense rested without calling any witnesses.[2] Defense counsel submitted a memorandum of law. Following the arguments of counsel, the trial court overruled the motion to suppress evidence.

## II. Legality of the Detention
### A. Standard of Review

■ Appellant contends○ the trial court erred in not suppressing the marijuana recovered from the trailer house and the blue Oldsmobile. In reviewing a rul-

ing on a motion to suppress evidence, an appellate court must determine the applicable standard of review. In *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App. 1997), the Court of Criminal Appeals made clear that while appellate courts should afford almost total deference to the trial court's determination of the historical facts, mixed questions of law and fact not turning on an evaluation of credibility and demeanor are to be reviewed *de novo*. *Id.* at 88. Specifically, questions of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. *Id.* at 87 (citing *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). This is so because "the trial judge is not in an appreciably better position than the reviewing court to make that determination." *Id.* We now turn to the level of suspicion required to justify appellant's detention.

### B. The Applicable Law— Reasonable Suspicion

■ In *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court recognized three categories of police-civilian interaction: (1) encounter; (2) temporary detention or stop; and (3) arrest. *See also State v. Simmang*, 945 S.W.2d 219, 222–23 (Tex.App.—San Antonio 1997, no pet.); *Francis v. State*, 896 S.W.2d 406, 408–09 (Tex.App.—Houston [1st Dist.] 1995), *pet. dism'd, improvidently granted*, 922 S.W.2d 176 (Tex.Crim.App. 1996).[3] We know that of the three catego-

---

2. We note that rule 104(d) of the Texas Rules of Evidence provides: "The accused in a criminal case does not, by testifying upon a preliminary matter out of the hearing of the jury, become subject to cross-examination as to other issues in the case." Tex.R. Evid. 104(d).

3. *Terry* spoke of "encounters" initiated by the police for a wide variety of purposes, some of which are wholly unrelated to a desire to prosecute a crime. Police officers do not violate the Fourth Amendment by merely approaching an individual in public to ask questions. *See Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229

(1983); *Francis*, 896 S.W.2d at 408–09. Such an encounter does not require any justification whatsoever on the part of the officer. *See United States v. Mendenhall*, 446 U.S. 544, 553–54, 100 S.Ct. 1870, 1876–77, 64 L.Ed.2d 497 (1980); *Harris v. State*, 913 S.W.2d 706, 708 (Tex.App.—Texarkana 1995, no pet.). The second category is a temporary detention, also known as the "stop" that allows the "frisk." *See Terry*, 392 U.S. at 16, 88 S.Ct. 1868. The third category is an arrest, which must be justified by probable cause to believe that the suspect has committed or is committing an offense. *See Henry v. United States*, 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959); *Amores v. State*, 816 S.W.2d 407,

ries, only investigative detentions and arrests amount to "seizures" of persons. *See Terry*, 392 U.S. at 19, 88 S.Ct. 1868; *Amores*, 816 S.W.2d at 417 (Campbell, J. dissenting). In the instant case, we are confronted with the second category, an investigative detention.

■■■ Law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *See Terry*, 392 U.S. at 22, 88 S.Ct. 1868; *Davis v. State*, 947 S.W.2d 240, 244 (Tex.Crim.App.1997); *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim.App.1989)("It is clear that circumstances short of probable cause may justify temporary detention for purposes of investigation."); *Crockett v. State*, 803 S.W.2d 308, 311 (Tex.Crim.App.1991). To justify an investigative detention the officer must have reasonable suspicion. *See Terry*, 392 U.S. at 21, 88 S.Ct. 1868; *Davis*, 947 S.W.2d at 242–43. Reasonable suspicion requires that the officer have specific articulable facts which, in light of his experience and personal knowledge, together with rational inferences from those facts, would reasonably warrant the intrusion on the freedom of the detainee for further investigation. *See Comer v. State*, 754 S.W.2d 656, 657 (Tex.Crim.App.1986); *Garza*, 771 S.W.2d at 558; *Simmang*, 945 S.W.2d at 222. In determining the exis-

tence of reasonable suspicion, an objective standard is utilized: would the facts available to the officer at the moment of seizure or search warrant a man of reasonable caution in the belief that the action taken was appropriate. *See Terry*, 392 U.S. at 21–22, 88 S.Ct. 1868; *Davis*, 947 S.W.2d at 243.

■■■ These "specific articulable facts" must create a reasonable suspicion that some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime. *See Royer*, 460 U.S. at 497, 103 S.Ct. 1319; *Garza*, 771 S.W.2d at 558, *Davis*, 947 S.W.2d at 244; *Viveros v. State*, 828 S.W.2d 2, 4 (Tex.Crim.App.1992); *Harris v. State*, 913 S.W.2d 706, 708 (Tex.App.— Texarkana 1995, no pet.). As the *Terry* Court noted: "Simple good faith on the part of the arresting officer is not enough . . . ." 392 U.S. at 21–22, 88 S.Ct. 1868.[4] The officer making an investigative detention or stop must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. *See Terry*, 392 U.S. at 27, 88 S.Ct. 1868.[5] *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Williams v. State*, 621 S.W.2d 609, 612 (Tex.Crim.App.1981). An investigative detention not based upon reasonable suspi-

---

416 (Tex.Crim.App.1991); *Francis*, 896 S.W.2d at 409. Probable cause to arrest exists where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe an offense has been or is being committed. *See Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959); *Hughes v. State*, 878 S.W.2d 142, 154 (Tex.Crim.App.1992); *Amores*, 816 S.W.2d at 411. *See also* John Q. Barrett, *Deciding the Stop and Frisk Cases: A Look Inside the Supreme Court's Conference*, 72 St. John's L. Rev. 749 (1998) (excellent recount of Supreme Court's decision making process in *Terry* ).

4. The *Terry* Court continued: "If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be secure in their persons, houses, papers and effects only in the discretion of the police." 392 U.S. at 21–22, 88 S.Ct. 1868 (quoting *Beck v. Ohio*, 379 U.S. 89, 97, 85 S.Ct. 223, 229, 13 L.Ed.2d 142 (1964)) (internal quotations deleted).

5. In this regard, the *Terry* Court stated: "In determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." 392 U.S. at 27, 88 S.Ct. 1868.

cion is unreasonable and, thus, violates the Fourth Amendment. *See Davis*, 947 S.W.2d at 243.

The reasonableness of an investigative detention turns on the totality of the circumstances in each case. *See United States v. Mendenhall*, 446 U.S. 544, 557, 100 S.Ct. 1870, 1879, 64 L.Ed.2d 497 (1980); *Shaffer v. State*, 562 S.W.2d 853, 855 (Tex.Crim.App.1978); *State v. Sailo*, 910 S.W.2d 184, 188 (Tex.App.—Fort Worth 1995, pet. ref'd); *Davis v. State*, 794 S.W.2d 123, 125 (Tex.App.—Austin 1990, pet. ref'd). In this context, the United States Supreme Court has noted that reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by the police and its degree of reliability. Both factors, quantity and quality, are considered in the totality of the circumstances. *See Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416–17, 110 L.Ed.2d 301 (1990); *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981). In *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim.App.1997), the Court of Criminal Appeals abandoned the "as consistent with innocent activity as with criminal activity" construct in determining reasonable suspicion for a temporary detention and established the following standard:

> We hold that the reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity.

On remand, the Austin Court of Appeals stated:

> We do not understand the Court of Criminal Appeals' holding to mean that any suspicion based on any articulable facts will support a temporary investigative detention. A reasonable suspicion means more than a mere hunch or

suspicion. *Davis v. State*, 947 S.W.2d 240, 244 (Tex.Crim.App.1997). Reasonable suspicion requires "that there is something out of the ordinary occurring and some indication that the unusual activity is related to crime." *Id.* (quoting *Viveros v. State*, 828 S.W.2d 2, 4 (Tex.Crim.App.1992)). The articulable facts relied on by the officer must support a reasonable suspicion that activity out of the ordinary is occurring or has occurred, that the detainee is connected to the unusual activity, and that the unusual activity is related to crime. *Id.* A temporary detention is not permissible unless the circumstances objectively support a reasonable suspicion that the person detained is, has been, or soon will be engaged in criminal activity. *Id.* If there are no facts that would make the conduct observed by the officer anything but innocuous, if there does not exist even a significant possibility that the person observed is engaged in criminal conduct, a detention of the person for further investigation is not constitutionally warranted. *See* 4 Wayne R. LaFave, *Search and Seizure*, § 9.4(b), at 149 (4th ed.1996).

*Woods v. State*, 970 S.W.2d 770, 773 (Tex. App.—Austin 1998, pet. ref'd).

### C. Anonymous Tips

While an anonymous tip usually will justify the initiation of a police investigation, *Clemons v. State*, 605 S.W.2d 567, 570 (Tex.Crim.App.1980); *Mann v. State*, 525 S.W.2d 174, 176 (Tex.Crim.App. 1975), an anonymous tip rarely will establish the requisite level of suspicion necessary to justify an investigative detention. *See White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *Reynolds v. State*, 962 S.W.2d 307, 311 (Tex.App.— Amarillo 1998, pet. ref'd); *Parish v. State*, 939 S.W.2d 201, 203 (Tex.App.—Austin 1997, no pet.). Simply stated, a police officer generally cannot rely alone on a police broadcast of an anonymous phone call to establish reasonable suspicion. *See*

*Wright v. State,* 932 S.W.2d 572, 576 (Tex. App.—Tyler 1995, no pet.) (citing *Rojas v. State,* 797 S.W.2d 41, 44 (Tex.Crim.App. 1990); *Colston v. State,* 511 S.W.2d 10, 12 (Tex.Crim.App.1974)). When an investigative detention is based solely on an anonymous tip, the court often has no way of evaluating the reliability of the information from the anonymous source. *See Ebarb v. State,* 598 S.W.2d 842, 844–45 (Tex.Crim. App.1980); *Davis,* 794 S.W.2d at 125. Consequently, there must be some further indicia of reliability—additional facts from which a police officer may reasonably conclude that the tip is reliable and a detention is justified. *See White,* 496 U.S. at 329, 110 S.Ct. 2412; *Davis,* 794 S.W.2d at 125. In other words, an anonymous tip must be sufficiently corroborated in order to rise to the level of reasonable suspicion to support an investigative detention. *See White,* at 329–32, 110 S.Ct. 2412. And as the Supreme Court declared in *White:* "[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." 496 U.S. at 330, 110 S.Ct. 2412. This is so because, in an anonymous tip situation, reasonable suspicion is dependent upon both the content of the information possessed by the police and its degree of reliability. *See id.* An officer's prior knowledge, his experience, and his corroboration of the details of the tip may be considered in giving the anonymous tip the weight it deserves. *See id.* at 329–30, 110 S.Ct. 2412. Mere corroboration of details that are easily obtainable at the time the information is provided, however, will not furnish the basis for reasonable suspicion. *See Gates,* 462 U.S. at 245, 103 S.Ct. 2317.

We now turn to consider several prior cases dealing with anonymous tips. In *Alabama v. White,* the Supreme Court considered whether an anonymous tip, as corroborated by independent police work, exhibited sufficient indicia of reliability to provide reasonable suspicion to make an investigative detention. 496 U.S. at 326–

27, 110 S.Ct. 2412. In *White,* the police received "a telephone call from an anonymous person, stating that Vanessa White would be leaving 235–C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel, and that she would be in possession of about an ounce of cocaine inside a brown attaché case." *Id.* at 327. The vehicle was stopped and after a consent to search, marijuana was found in the attache case. *See id.*

The Supreme Court held that tip, as corroborated by independent police work, exhibited sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop. *See id.* at 326–27. In arriving at their decision, the Court stated:

> [A]n anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity inasmuch as ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations and given that the veracity of persons supplying anonymous tips is "by hypothesis largely unknown, and unknowable."

*Id.* at 329, 110 S.Ct. 2412 (quoting *Illinois v. Gates,* 462 U.S. 213, 237, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)).

The Court held the tip had been sufficiently corroborated to furnish the officers with reasonable suspicion. *See id.* at 332, 110 S.Ct. 2412. Thus, the Court's holding was based, in part, that "the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." *Id.* (citing *Illinois v. Gates,* 462 U.S. 213, 245, 103 S.Ct. 2317, 2335–36, 76 L.Ed.2d 527 (1983)).

Recently, the Fifth Circuit, considered the sufficiency of an anonymous tip to support the existence of reasonable suspicion and probable cause to enter a warehouse where cocaine was discovered. *See United States v. Morales,* 171 F.3d 978

(5th Cir.1999). In *Morales*, the Fort Worth police received an anonymous "911" call in which the unidentified caller reported that two Hispanic males were unloading cocaine from flatbed trucks at a business called Milagro's Botanica. *See* at 980–81. Officers were dispatched to Milagro's, but upon their arrival did not see any flatbed trucks or Hispanic males. *See id.* The officers did see a pickup truck, which they determined belonged to an individual with a Hispanic surname. *See id.* At the scene, the officers heard loud noises, which according to the officers sounded like someone opening wood crates, arising from a building behind Milagro's. *See id.*

One officer looked into the building and saw the gloves and knees of two individuals opening wood crates. *See id.* Three other officers banged on front door and shouted "Fort Worth Police: Open the door." *See id.* When a man opened the door, the officers rushed in with their weapons drawn and handcuffed and arrested two men, the defendants. *See id.* Inside the warehouse, the officers found two crates filled with packages containing a large quantity of cocaine. *See id.*

■ The trial court denied the defendants' motions to suppress, but the Fifth Circuit reversed holding that under the totality of the circumstances, the officers lacked reasonable suspicion to enter and probable cause to search at the time they ordered the defendants to open the door. *See id.* at 982–83. As the court stated:

> The individuals who made the 911 call did not indicate how they knew the information. The police officers acknowledged they did not see a flatbed truck or Hispanic males. Further, the officers did not see anything outside the warehouse to corroborate the 911 call. While the officers heard noises coming from the direction of the warehouse, the offi-

cers admitted they did not spend much time investigating after they arrived at the scene. The facts do not justify probable cause for a warrantless search. *Id.* In other words, without sufficient information, corroboration, or verification, an anonymous tip is insufficient to support a finding of reasonable suspicion or probable cause. *See id.*

In *Rojas v. State*, 797 S.W.2d 41, 43–44 (Tex.Crim.App.1990), the Court of Criminal Appeals held "that in order to satisfy the totality of the circumstances test, when an anonymous tip is relied upon to furnish probable cause, the informer must assert personal knowledge or there must be additional facts showing reason to believe that the contraband sought will probably be where the information indicates it will be."[6] The informant in *Rojas* supplied detailed information:

> The vehicle was described as a 1982 Lincoln, maroon over black with roses on the windows, and unicorns etched in the back glass and windshield. The caller also said that the vehicle would be at the San Jacinto Baptist Church at 2:00 p.m. for funeral services after which they would go to graveyard services at Memorial Park Cemetery.

*Id.* at 42. The Court of Criminal Appeals considered the evidence using the totality of the circumstances test:

> The evidence showed that Officer Harold Dempsey received a telephone call from an anonymous caller with a male voice who stated that he, the informer, had been advised that a vehicle belonging to appellant contained a quantity of marihuana in the trunk. There was no evidence that the informer ever asserted that he had any personal knowledge whatsoever of the contraband.
> Additionally, the information provided by the anonymous tip concerning the

---

**6.** We recognize that *Rojas* deals with an anonymous tip relative to probable cause rather than reasonable suspicion; however, the reasoning used by the court in *Rojas* is applicable in evaluating the existence of probable

cause or reasonable suspicion. *See Simmang,* 945 S.W.2d at 223–24 (citing *Rojas* in reviewing whether anonymous tip was sufficient to establish reasonable suspicion).

funeral which appellant was to attend was potentially available via the local media. There were no additional facts within the informer's tip which indicated any special or personal knowledge on the part of the informer. Thus, it was not reasonable for the police to conclude that the funeral information confirmed the other information within the tip.

*Id.* at 44. The Court held the anonymous tip was not sufficiently corroborated to rise to the level of probable cause. *See id.*

In *Simmang,* the San Antonio Court of Appeals considered whether the anonymous tip and the corroborative acts of the police officers rose to the level of reasonable suspicion. The court stated:

In the instant case, the conclusory anonymous tip did not reflect the informant's "veracity," "reliability," or "basis of knowledge" which are still relevant in a reasonable suspicion context, although in a lesser degree than in a probable cause context. *See White,* 496 U.S. at 328–29, 110 S.Ct. at 2415. The informant did not assert any personal knowledge and no additional facts within the tip indicated any special or personal knowledge on the part of the informant. *Cf. Rojas v. State,* 797 S.W.2d 41, 44 (Tex.Crim.App. 1990). The tip gave no description of the offending individual as to age, physical appearance, or clothing. He was described only as a "white male," which description would fit a large segment of the population. The car was described only as a gold-colored four door sedan. No license plate number, make, or model of the car were included in the tip. The tip may have indicated the offense was in progress, but the record does not reflect when the tip was received by the dispatcher. An individual in an automobile is highly mobile. When Officer Leal arrived at the parking lot he observed a gold-colored car with a white male seated therein. He did not see any other gold-colored cars. Leal observed no criminal activity in the public parking lot and there was no suggestion to connect

the white male with any unusual activity. Officers Leal and Lozcano parked their police vehicles so as to block appellee's car. Appellee was not free to leave and Leal considered him detained and in custody before Leal approached the car. Without any proximity of time between the stop and the reported event, it would not be reasonable to conclude solely on the basis of the match of the color of the car that the blocked car was the car involved in the reported incident. *See Glass v. State,* 681 S.W.2d 599, 601 (Tex. Crim.App.1984).

*See Simmang,* 945 S.W.2d at 223–24.

## D. Application to the Instant Case

■ We begin by noting that Candelari did not personally speak with the informant. All of the anonymous information was communicated to Candelari by the dispatcher but the record does not reflect when the tip was received by the dispatcher. *See id.* at 224. There is no evidence that the dispatcher knew the informant. Indeed, it is apparent the informant was just as anonymous to the dispatcher as the informant was to Candelari. There is no evidence of the informant's identity, even as it relates to age, race or gender. *Cf. Rojas,* 797 S.W.2d at 44 (noting that anonymous caller had male voice). Moreover, there is absolutely no indication of the informant's veracity, reliability, or basis of knowledge. *See White,* 496 U.S. at 328–29; *Rojas,* 797 S.W.2d at 44; *Simmang,* 945 S.W.2d at 224. The informant did not assert any personal knowledge nor were there additional facts within the tip which indicated any special or personal knowledge of the contraband. *See Rojas,* 797 S.W.2d at 44. Additionally, the anonymous tipster did not provide the name, any identifying information, or description of the offending individual as to age, race, gender, physical appearance, or clothing. *See White,* 496 U.S. at 327, 110 S.Ct. 2412 (noting that tipster identified defendant by name); *Rojas,* 797 S.W.2d at 44; *Simmang,* 945 S.W.2d at 224 (noting that tip-

ster described defendant only as "white male"). While the anonymous source attempted to describe the vehicles at trailer 24, the descriptions were vague and general and the description as to the color of the Oldsmobile was wrong. *See Simmang*, 945 S.W.2d at 224 ("The car was described only as a gold-colored four door sedan."). Moreover, the anonymous tip did not give the make, model, year, any distinguishing characteristics or license plate number of the pickup truck. *Cf. Rojas*, 797 S.W.2d at 42 ("The vehicle was described as a 1982 Lincoln, maroon over black with roses on the windows, and unicorns etched in the back glass and windshield."). Finally, it is important that the informant did not provide any information as to future actions. *Cf. White*, 496 U.S. at 332, 110 S.Ct. 2412; *Rojas*, 797 S.W.2d at 42. It is clear that both the quantity and quality of the information supplied by the tipster were sorely lacking. *Cf. White*, 496 U.S. at 330, 110 S.Ct. 2412. And, because the tip had a very low degree of reliability, Candelari was required to obtain more information to "establish the requisite quantum of suspicion" necessary to rise to the level of reasonable suspicion. *See id.*

After receiving the tip from the dispatcher, Candelari established surveillance and observed two vehicles in the driveway of trailer 24. While the vague description of the pickup truck was corroborated, the description of the other vehicle was wrong. Moreover, we must remember that the mere corroboration of facts that are easily obtainable at the time the information is provided will not furnish reasonable suspicion as a basis for a stop. *See Illinois v. Gates*, 462 U.S. 213, 245 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Anyone with enough knowledge about a given person to make him the target of a prank, or to harbor a grudge against him, will certainly be able to formulate an anonymous

tip hoping to initiate an investigation and perhaps a forcible stop or detention.[7]

The next inquiry is whether there was corroboration of the details linking appellant to the stated criminal activity. The anonymous informant stated there was a quantity of marijuana in a trailer house at 2151 Shaver, No. 24 in Pasadena. As noted earlier, there is no evidence that this information was within the personal knowledge of the anonymous caller or that there were other circumstances supporting this conclusion. *See Rojas*, 797 S.W.2d at 44 ("There was no evidence that the informer ever asserted that he had any personal knowledge whatsoever of contraband."). Candelari's independent investigation, which was nothing more than a 20 minute surveillance, failed to lead to any corroborative facts that marijuana was in the house. Therefore, the presence of marijuana in the trailer house was not corroborated in any manner prior to the detention of appellant.

We recognize that an inadequate anonymous tip may be corroborated by an officer's prior knowledge and experience. *See White*, 496 U.S. at 329–32, 110 S.Ct. 2412. Candelari, however, did not have any prior knowledge of or experience with appellant. Although he was aware that the location named in the tip was a trailer park, Candelari specifically stated he had never been to trailer 24 for any reason. Moreover, he did not testify he was aware of any criminal records of the occupants of the trailer, or that the specific location was a high crime area or an area where narcotics are frequently found.

Twenty minutes after establishing surveillance, Candelari saw a man place a small child and a package/object in the pickup truck. Candelari suspected the package/object was a brick of marijuana. The record does not reveal Candelari's location while conducting the surveillance and there is no evidence that he used binoculars or anything else to aide his

---

7. This was the concern expressed by Justice Stevens in his dissent. *See White*, 496 U.S. at 333, 110 S.Ct. 2412 (Stevens, J. dissenting).

vision.[8] Consequently, we hold the mere observation of an object, which Candelari surmised to be a brick of marijuana, was nothing more than an inchoate and unparticularized suspicion or hunch forbidden by *Terry.* 392 U.S. at 27, 88 S.Ct. 1868.

Moreover, reasonable suspicion requires that some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime. *See Royer,* 460 U.S. at 497, 103 S.Ct. 1319; *Garza,* 771 S.W.2d at 558; *Davis,* 947 S.W.2d at 244; *Viveros,* 828 S.W.2d at 4; *Harris,* 913 S.W.2d at 708. In the instant case, appellant placed a football and his small child in a vehicle at approximately 7:20 a.m., a normal time when a parent would drive a child to daycare and deliver the child, along with a toy to occupy the child during the stay. This conduct is certainly not out of the ordinary or unusual, instead it is commonplace. And even if appellant's placing the football in the pickup truck could be considered unusual activity, there was nothing to indicate that the activity was related to a crime because the informant never said appellant would be transporting marijuana. Taken in context with the anonymous tip, appellant's placing the football in the pickup truck is not a corroborative detail or an additional fact that would give rise to reasonable suspicion.

When viewed from an objective standard, *see Terry* 392 U.S. at 21–22, 88 S.Ct. 1868, the quantity and quality of the anonymous tip was not sufficiently corroborated to warrant a man of reasonable caution in the belief that the detention of appellant was appropriate.

### E.  Conclusion–Anonymous Tip

█  While affording total deference to the trial judge's determination of the his-

---

8.  On cross-examination, the following exchange occurred between the appellant's attorney and Candelari:

Q:  And what you saw from that surveillance was [appellant] enter the truck, correct?
A:  Yes, ma'am.
Q:  You saw an older man get into the truck?
A:  Yes, ma'am.
Q:  You saw a child get into the truck?
A:  Yes, ma'am.
Q:  And you saw a football?
A:  Yes, ma'am.
Q:  You saw what was later discovered to be a football in the truck?
A:  That's correct.
Q:  There's nothing remotely criminal about that activity, is there?
A:  No, ma'am.
Q:  And that information didn't do anything to make you believe more that there may have been marijuana in that house?
A:  At the time I did not know that was a football. *From where I was parked, I couldn't tell it was a football.* It looked like a package, which was consistent with my experience as possibly being a bundle of marijuana.
Q:  Let me get this straight. A—football looked, to you, like it could have been a package of marijuana?
A:  Yes, ma'am.
Q:  What—it looked to you that it was a package. You couldn't confirm there was any marijuana or anything like that?
A:  *Not from where I was at, I couldn't.*
Q:  All you said you saw is a package or some type of object—did you say you saw a package like thing or an object? Was it more like an object, really, than a package?
A:  The small, dark colored object.
Q:  Just an object -
A:  Right.
Q:  —small, dark colored object? Okay. So, nothing that you saw really could have confirmed anything that was said in the anonymous tip?
A:  Yes. I did confirm that that residence was actually there and that there was a red pickup truck out in front of the residence.
Q:  Other than there being a red pickup truck and there actually being a residence, there's nothing else that would substantiate the tip that you got?
A:  The fact that I saw the defendant walk outside and place the object in the truck?
Q:  And besides you seeing the defendant placing an object in the car—besides -
A:  No.
Q:  Nothing else? And based on that information, you followed him is that correct?
A:  Yes, ma'am.
Q:  And based on that information, you had his vehicle stopped; is that correct?
A:  Yes, ma'am.
(emphasis added).

torical facts, but reviewing *de novo* the legal determination of reasonable suspicion as we are required to do under *Guzman,* we conclude that under the totality of the circumstances, the anonymous tip, uncorroborated as to its significant aspects by independent police work, did not exhibit sufficient indicia of reliability to justify the investigative stop of the vehicle in which appellant was traveling.

### F. Alternate Theory–Traffic Violation

The State advances an alternate theory in support of the stop of appellant's vehicle. Under this theory, the State contends Sills detained appellant pursuant to a valid traffic stop. This argument stems from Sills' testimony that the child in the pickup truck looked back at Sills several times, which indicated to Sills the child might not be wearing a seat belt. When the pickup truck was stopped, however, Sills observed the child was wearing a seat belt.[9] We reject this alternative argument for the following reasons.

First, the record does not support the contention that Sills stopped appellant's vehicle for a traffic violation. The record reflects that the Pasadena dispatcher requested that a South Houston Police Officer stop the vehicle and Sills responded to this dispatch. In the course of effectuating the stop, the child looked back at Sills several times. Sills thought the child's activity might be evidence of a traffic offense. The State then asked: "And based on the request from Pasadena and that possible traffic violation, did you stop the vehicle." Sills responded in the affirma-

tive. On cross-examination, however, the following colloquy occurred:

A. So, Officer Sills, the reason you stopped the vehicle was because you had—a Pasadena officer wanted you to stop the vehicle?

A. Yes, ma'am.

A. That is the reason you stopped the vehicle?

Absolutely right?

A. Yes, ma'am.

Q. Okay. You did not stop the vehicle because the child wasn't—you thought the child wasn't wearing a seat belt. You stopped the vehicle because you were told to by the Pasadena officer; is that correct?

A. Yes, ma'am.

While we agree with the rule of law that the trial court is the sole judge of the credibility of the witnesses at a motion to suppress, and that it may choose to believe or disbelieve any or all of a witness' testimony, *see Allridge v. State,* 850 S.W.2d 471, 492 (Tex.Crim.App.1991), *Alvarado v. State,* 853 S.W.2d 17, 23 (Tex.Crim.App.1993), we hold it would be an unreasonable interpretation of that rule to apply it to the same witness when questioned on the same subject. In the instant case, we believe it more reasonable that the trial court understood Sills' testimony to be that he stopped the vehicle at the request of the Pasadena dispatcher rather than because the child turned to look at him. This interpretation is rational when the entirety of Sills' testimony is considered. Sills testified regarding his actions

---

9. The State disputes this conclusion. The record, however, reflects the following:

Q: When you stopped the vehicle, what was the next thing that you did?

A: I approached the vehicle, being kind of cautious, and asked the driver for a driver's license and insurance. I noticed the middle passenger, the small child, did have a seat belt on; but the passenger in the vehicle was holding his seat belt strap. It wasn't buckled in.

Q: That would be the individual in the far passenger seat?

A: Yes, sir.
(emphasis added).

This is the whole of the testimony relating to seat belts. The State interprets this excerpt as stating "a passenger in the front seat of the truck was holding the seat belt across the child's lap, but that the seat belt was not fastened." The record does not support the State's contention that the child was not wearing a seat belt.

after the stop: "I advised [appellant] that a Pasadena officer wanted to talk to him and made sure that he knew that the gentleman was a Pasadena police officer. And we stood back, but I did not have any more conversation with him after that."

Second, assuming arguendo, that the trial court believed Sills stopped appellant's vehicle for a traffic violation, such a stop would not have been lawful. A routine traffic stop is a temporary investigative detention. *See Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Therefore, our discussion of the law in part II, B, *supra*, is applicable here. Moreover, a violation of a traffic law is sufficient authority for an officer to stop a vehicle. *See Armitage v. State*, 637 S.W.2d 936, 939 (Tex.Crim.App. 1982); *Valencia v. State*, 820 S.W.2d 397, 400 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd).

In light of this authority, Sills' was required to have specific articulable facts which, in light of his experience and personal knowledge, together with rational inferences from those facts, would warrant a man of reasonable caution in the belief that it was appropriate to stop appellant's vehicle to determine whether the child was wearing a seat belt. The specific articulable facts must create a reasonable suspicion that some activity out of the ordinary is occurring. First, we do not believe that a small child turning to look at a marked patrol vehicle is activity out of the ordinary; in fact, we recognize it as common place. Therefore, that activity alone was not sufficient to justify the detention. Second, Sills stated only that there "might" have been a traffic violation. This does not rise above an inchoate and unparticularized suspicion or hunch and, therefore, the detention was unreasonable under *Terry*. *See* 392 U.S. at 27, 88 S.Ct. 1868. Accordingly, we hold that if appellant's vehicle was stopped for a traffic offense, the stop was unlawful.

Assuming arguendo that Sills had reasonable suspicion to detain appellant for a traffic violation, we would nevertheless find the continued detention of appellant illegal. An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *See Royer*, 460 U.S. at 500, 103 S.Ct. 1319. An investigative detention becomes unreasonable when it is not reasonably related in scope to the circumstances which justified the interference in the first instance. This court has held an investigative detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *See Collier v. State*, 843 S.W.2d 176, 177 (Tex.App.— Houston [14th Dist.] 1992, no pet.) (holding that it was unlawful to detain vehicle occupants fc · traffic violation until a female officer could arrive and search the occupants). *See also Ussery v. State*, 651 S.W.2d 767, 770 (Tex.Crim.App.1983) (holding that a detention for investigatory purposes must be limited; it must be temporary and last no longer than necessary to effect the purpose of the stop); *Anderson v. State*, 787 S.W.2d 221, 229 (Tex.App.—Fort Worth 1990, no pet.) (holding that the "[t]he propriety of the duration of · the detention is judged by whether police pursued a means of investigation which dispelled or confirmed their suspicions quickly and in a manner that did not exceed the scope of the detention.").

Here, when Sills confirmed that the child was wearing a seat belt, he did not terminate the detention. Instead, he continued the detention until Candelari arrived. This action exceeded the scope of the initial detention, i.e., to determine whether the child was wearing a seat belt. Accordingly, we hold that even if Sills' initial detention of appellant was legal, the continued detention was unreasonable and, therefore, unlawful.

Finally, the State argues appellant's detention was lawful because after the stop appellant failed to provide

Sills with proof of insurance. Our law, however, is clear that the fruits obtained after an illegal detention cannot be used to cure the initial illegality. *See Wilson v. State,* 621 S.W.2d 799, 804 (Tex.Crim.App. 1981); *Colston v. State,* 511 S.W.2d 10, 13 (Tex.Crim.App.1974). Therefore, we cannot consider the failure to have proof of insurance as a lawful basis for the detention. We hold the detention was not rendered lawful as a result of appellant's failure to provide proof of insurance.

For these reasons, we reject the State's alternate theory in support of the stop of appellant's vehicle. Concluding that neither officer has sufficient reasonable suspicion to justify the detention, however, does not end our analysis.

### III. Consent to Search

■■■ As noted earlier, appellant consented to the search of trailer 24 and the Oldsmobile vehicle. We must now determine whether the lack of reasonable suspicion tainted the consent of the subsequent searches. *See Munera v. State,* 965 S.W.2d 523, 532 (Tex.App.—Houston [14th Dist.] 1997, pet. ref'd).

■■■ In *Florida v. Royer,* 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983) the United States Supreme Court held that a consent to search may be tainted by an illegal arrest even if voluntarily given and that the State must prove that the consent was independent of the illegal arrest. In *Brick v. State,* 738 S.W.2d 676, 681 (Tex.Crim.App.1987), the Court of Criminal Appeals adopted the four factors analysis in *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975), to determine the admissibility of evidence derived from a consensual search subsequent to an illegal detention.[10] The burden is on the State to prove by clear and convincing evidence that the factors militate in favor of attenuation of the taint from the illegal detention.

*See Brick,* 738 S.W.2d at 681; *Munera,* 965 S.W.2d at 532. The factors announced in *Brown* are: (1) whether *Miranda* warnings were given; (2) the temporal proximity of the arrest and the consent; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of police misconduct. *See Brown,* 422 U.S. at 603–04, 95 S.Ct. 2254. We now turn to consider those factors in light of the instant case.

First, there is no evidence that either Candelari or Sills gave appellant *Miranda* warnings. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Although the giving of *Miranda* warnings is not dispositive with regard to taint dissipation, the warnings are a consideration. *See Cortez v. State,* 788 S.W.2d 89, 92 (Tex.App.—Houston [14th Dist] 1990, no pet.). The failure to give appellant *Miranda* warnings militates against a finding of attenuation.

The second factor is the temporal proximity of the illegal arrest to the consent. Although the exact time between the illegal detention and consent to search is not revealed by the instant record, it does appear that the written consent to search was executed shortly after the stop. This factor is based on the reasoning that the shorter the time, the more likely the taint of the illegal detention has not been purged. *See Maixner v. State,* 753 S.W.2d 151, 156 (Tex.Crim.App.1988); *Roth v. State,* 917 S.W.2d 292, 304 (Tex.App.—Austin 1995, no pet.). Consequently, this factor militates against attenuation.

The third factor relates to intervening circumstances. *See Brown,* 422 U.S. at 603–04, 95 S.Ct. 2254. There are no intervening circumstances in the instant case. Absent some record evidence of intervening circumstances that served to break the chain of events between appellant's illegal detention and his consent, this factor militates against a finding of attenuation.

---

**10.** *Brown* concerned the admission of a confession after an illegal arrest. 422 U.S. at 591–93, 95 S.Ct. at 2256.

The fourth and final factor to be considered is the flagrancy of police misconduct. *See id.* As noted above, Candelari conducted surveillance for only 20 minutes before following appellant and ordering his detention. Candelari conducted no other independent investigation to corroborate the information received from the anonymous informant. Candelari ordered the detention of appellant for the purpose of obtaining consent to search trailer 24. This falls into the category of cases in which the detention had a "quality of purposefulness." *See id.* at 605, 95 S.Ct. 2254. Therefore, this factor also militates against attenuation of the taint.

In light of this attenuation analysis, we hold the State has failed to meet its burden of proving by clear and convincing evidence that appellant's consent was freely and voluntarily given.

## IV. Conclusion

We find that Candelari did not have reasonable suspicion to detain appellant. The illegal detention tainted appellant's consent to search. Because Candelari did not have reasonable suspicion, the trial court erred in refusing to grant appellant's motion to suppress. We reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion. *See Munera,* 965 S.W.2d at 532.