

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M.J., JR | ) | No. ED112446 |
| | ) | |
| | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| | ) | Cause No. 2322-JU00563 |
| | ) | |
| | ) | Honorable Barbara T. Peebles |
| | ) | |
| | ) | FILED: February 25, 2025 |

<u>Opinion</u>

J.M.J., a juvenile, appeals from the trial court's judgment certifying him to be prosecuted under the general law. J.M.J. raises three points on appeal. Point One argues the trial court abused its discretion certifying J.M.J. because, contrary to the trial court's finding under § 211.071.6(6),[1] the evidence showed he was not a sophisticated and mature young adult. Point Two contends the trial court abused its discretion in certifying him by not appropriately considering racial disparity pursuant to § 211.071.6(10). Point Three claims the trial court abused its discretion in certifying him because he was denied his right to effective assistance of counsel under § 211.211, RSMo (Cum. Supp. 2021), in that Certification Counsel failed to retain an expert in child psychiatry and adolescent brain development, whose testimony would have caused the trial court to deny certification. Because the first three critical statutory factors

---

[1] All statutory references are to RSMo (Cum. Supp. 2018), unless otherwise noted.

pursuant to § 211.071.6(1)–(3) were uncontested and supported certification, J.M.J. has not shown the trial court's findings as to the sixth and tenth factors demonstrated an abuse of discretion under the totality of the circumstances. We deny Points One and Two. Because J.M.J. has not shown he was deprived of a meaningful hearing or prejudiced by Certification Counsel's alleged failure to call an expert, we deny Point Three's claim of ineffective assistance. Accordingly, we affirm the trial court's judgment.

Background

On September 28, 2023, Juvenile Officer filed a Petition alleging that J.M.J., aged seventeen years and three months, committed the felony offenses of second-degree murder and attempted first-degree robbery. The Petition alleged that on September 27, 2023, J.M.J., acting with other juveniles, planned to forcefully steal marijuana from a drug dealer. J.M.J. took a substantial step towards the commission of first-degree robbery by pointing a firearm at the drug dealer. In the course of the attempted robbery, juvenile's co-conspirator was shot and killed.

On October 13, 2023, Juvenile Officer moved to dismiss the Petition in order to allow J.M.J. to be prosecuted under general law. The trial court held a certification hearing. At the hearing, J.M.J. was represented by Certification Counsel, who argued that J.M.J. should be recommitted to the Department of Youth Services (DYS) residential treatment. Deputy Juvenile Officer testified about her report recommending certification and presented exhibits of her Social Investigation Report and J.M.J.'s Birth Certificate.

Following the hearing, the trial court granted the motion to dismiss the Petition and certified J.M.J. for transfer to a court of general jurisdiction to be prosecuted under general law. In its judgment, the trial court found the totality of the circumstances showed J.M.J. could not be properly treated under the juvenile code. The trial court found that second-degree murder and attempted first-degree robbery were serious offenses involving viciousness, force, and violence

2

in that J.M.J. was alleged to have conspired and acted with others to set up a drug deal and attempt to rob the dealer at gunpoint, resulting in the death of a juvenile by gunfire. This incident consisted of high-risk delinquent behavior that is a danger to the community. The trial court further found J.M.J. was beyond rehabilitation by DYS. The trial court noted this was J.M.J.'s thirteenth referral to the juvenile court and second adjudication. DYS had unsuccessfully attempted to rehabilitate J.M.J. during an eight-month commitment. Furthermore, J.M.J. was alleged to have committed the subject offenses while in Mother's custody less than two months after being discharged from DYS aftercare. The trial court found J.M.J.'s environmental situation, emotional condition, pattern of living, and alleged criminal conduct indicated he was "sophisticated" and "streetwise." The trial court found the community's need to be protected from J.M.J.'s criminal activity required more time and long-term care and structure than DYS could provide before he turned nineteen years old. Regarding the factor concerning racial disparity, the trial court stated that race was not a factor in its decision. The trial court concluded that there was no reasonable prospect of rehabilitation within the juvenile system given the seriousness of the alleged offenses and J.M.J.'s age and maturity. Following the trial court's certification, J.M.J. filed this appeal.

Standard of Review

We review a trial court's juvenile certification decision for an abuse of discretion given the totality of the circumstances. *Int. of D.J.S.*, 670 S.W.3d 249, 253 (Mo. App. E.D. 2023) (citing *Int. of T.D.S.*, 643 S.W.3d 510, 516 (Mo. App. E.D. 2021)). A trial court abuses its discretion when its ruling "is so unreasonable and arbitrary that it shocks the sense of justice and is clearly against the logic of the surrounding circumstances." *Id.* (quoting *T.D.S.*, 643 S.W.3d at 516). "In assessing the criteria set forth in [§] 211.071.6, 'the juvenile court is entitled to significant discretion in reaching its certification determination.'" *A.R.K. v. Juv. Off.*, 666

3

S.W.3d 233, 239 (Mo. App. W.D. 2023) (internal quotation omitted). We will affirm certification "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *D.J.S.*, 670 S.W.3d at 253 (internal citation omitted).

<u>Discussion</u>

**I.** **Points One and Two—The Trial Court Did Not Abuse its Discretion in Applying the § 211.071.6 Certification Factors**

When considering juvenile certification, a trial court considers the following non-exclusive factors:

> A written report shall be prepared in accordance with this chapter developing fully all available information relevant to the criteria which shall be considered by the court in determining whether the child is a proper subject to be dealt with under the provisions of this chapter and whether there are reasonable prospects of rehabilitation within the juvenile justice system. These criteria shall include but not be limited to:
> (1) The seriousness of the offense alleged and whether the protection of the community requires transfer to the court of general jurisdiction;
> (2) Whether the offense alleged involved viciousness, force and violence;
> (3) Whether the offense alleged was against persons or property with greater weight being given to the offense against persons, especially if personal injury resulted;
> (4) Whether the offense alleged is a part of a repetitive pattern of offenses which indicates that the child may be beyond rehabilitation under the juvenile code;
> (5) The record and history of the child, including experience with the juvenile justice system, other courts, supervision, commitments to juvenile institutions and other placements;
> (6) The sophistication and maturity of the child as determined by consideration of his or her home and environmental situation, emotional condition and pattern of living;
> (7) The age of the child;
> (8) The program and facilities available to the juvenile court in considering disposition;
> (9) Whether or not the child can benefit from the treatment or rehabilitative programs available to the juvenile court; and
> (10) Racial disparity in certification.

§ 211.071.6.  A trial court "need not give equal weight to each of the listed factors, nor is it required to make an express finding on each one."  *A.R.K.*, 666 S.W.3d at 239 (internal quotation omitted).

In Points One and Two, J.M.J. disputes the trial court's findings as to the sixth and tenth factors, respectively.  J.M.J. first maintains the evidence showed he was not sophisticated or mature as found by the trial court under § 211.071.6(6).  J.M.J. next asserts the trial court erred by refusing to consider race rather than actively considering race to find there was no racial disparity pursuant to § 211.071.6(10).  J.M.J. acknowledges the trial court correctly determined certification was supported by the first three factors, which are the most critical.  We find the trial court did not abuse its discretion in finding the totality of the circumstances supported certification.

Juvenile Officer alleged that J.M.J., were he an adult being tried under general law, committed the felony offenses of second-degree murder and attempted first-degree robbery.  The trial court found the allegations against J.M.J. were serious and reflected high-risk delinquent behavior that required protecting the community.  *See* § 211.071.6(1).  The seriousness of the offense "is a 'dominant criterion among the ten factors.'"  *D.J.S.*, 670 S.W.3d at 253–54 (quoting *T.D.S.*, 643 S.W.3d at 537).  The trial court further found the allegations against J.M.J. involved viciousness, force, and violence in that J.M.J. was alleged to have conspired and acted with three others to set up a drug deal and attempt to rob the dealer at gunpoint.  *See* § 211.071.6(2).  The trial court also found the alleged offenses were committed against persons and resulted in a juvenile co-conspirator's death.  *See* § 211.071.6(3).  These uncontested findings supported certification under the first three factors, which have repeatedly been held to be ***"the most***

*critical considerations in certification.*" *D.J.S.*, 670 S.W.3d at 253–54 (internal quotation omitted).

Regarding Point One, the trial court found J.M.J.'s sophistication and maturity weighed in favor of certification under § 211.071.6(6) after considering the nature and planning involved in the alleged offenses, J.M.J.'s possession of a firearm, as well as J.M.J.'s refusal to follow Mother's instructions to remain at home after returning from DYS custody and instead sometimes staying away from home for several days. We disagree with J.M.J.'s contention that the trial court improperly conflated sophistication and maturity with being streetwise and resourceful, and instead find the record supported the trial court's conclusions. Although J.M.J. disputes whether the evidence showed he was the ringleader for the alleged offenses, the trial court did not need to find that J.M.J. was the principle planner of the armed robbery in order to find his alleged participation and firearm possession demonstrated he understood the nature of the offenses, which resulted in the death of a fellow juvenile. Furthermore, J.M.J. has not shown how the trial court's allegedly improper findings as to J.M.J.'s sophistication and maturity required ***not*** certifying him, given the strength of the trial court's uncontested findings as to the first three critical factors as well as its finding that J.M.J. required more long-term care and structure than DYS could provide. *See Int. of E.T.S.*, 663 S.W.3d 818, 828 (Mo. App. W.D. 2023) (finding a claim of improperly admitted testimony regarding the juvenile's maturity and likelihood to benefit from juvenile system treatment was not prejudicial because dismissal of the juvenile petition was "easily" supported by the first three factors based on the allegations of second-degree murder and armed criminal action, which are serious, violent crimes against persons). We deny Point One.

Point Two claims the trial court failed to consider racial disparity as required by § 211.071.6(10). The trial court stated race was not a consideration in J.M.J.'s certification. We understand the distinction J.M.J. attempts to draw between a trial court stating its decision was not improperly based on race versus a trial court affirmatively considering race and finding that there were no racial disparities at play. However, this Court has rejected the argument that a trial court fails to satisfy this criteria by stating race was not considered in its certification decision. *T.D.S.*, 643 S.W.3d at 526. We also note that the only trial record regarding this point was the Deputy Juvenile Officer's testimony that race played no role in her decision to recommend certification, which was not challenged on cross-examination. Moreover, as discussed in Point One, J.M.J. fails to show how the trial court's alleged failure to consider racial disparity would have overcome the weight accorded by the trial court to the first three most critical factors as well as its finding that J.M.J. could not be rehabilitated in the juvenile system. *See D.J.S.*, 670 S.W.3d at 253–54 (internal citation omitted); *see also A.R.K.*, 666 S.W.3d at 238 (quoting *J.N.W. v. Juv. Off.*, 643 S.W.3d 618, 631 (Mo. App. W.D. 2022) (noting "we will not reweigh the evidence" when reviewing a certification decision)). Point Two is denied.

## II. Point Three—No Ineffective Assistance of Certification Counsel

A juvenile has a right to effective counsel in a juvenile certification proceeding. *Int. of K.M.F.*, 668 S.W.3d 302, 306 (Mo. App. E.D. 2023) (citing *J.N.W.*, 643 S.W.3d at 634). Missouri courts have left unresolved which standard of review applies to claims of ineffective assistance of certification counsel. *Id.* at 308 (citing *J.NW.*, 643 S.W.3d at 635). The most recent cases involving alleged ineffective assistance of counsel in a juvenile certification all upheld certification, even under the stricter *Strickland*[2] standard, when the juvenile failed to

---

[2] Missouri courts have not decided between the standard of *Strickland v. Washington*, 466 U.S. 668 (1984), or the lower burden of a meaningful hearing. *See J.N.W.*, 643 S.W.3d at 635–36. Even where the ineffective assistance of

demonstrate prejudice. *See, e.g., D.L.C. v. Juv. Off.*, 697 S.W.3d 775, 783 (Mo. App. W.D. 2024); *C.R.B. v. Juv. Off.*, 673 S.W.3d 135, 139–40 (Mo. App. W.D. 2023); *K.M.F.*, 668 S.W.3d at 310–11; *J.N.W.*, 643 S.W.3d at 637. We deny J.M.J.'s Point Three on the same grounds.

J.M.J. argues Certification Counsel was ineffective for failing to call an expert in child psychiatry and adolescent brain development and that, but for this failure, the trial court would have denied certification. We disagree. The record is clear that the trial court was primarily concerned with the severity of the alleged offenses of second-degree murder and attempted first-degree robbery, the force and violence involved in J.M.J.'s alleged gun use, and the fact that the alleged actions resulted in the death of another juvenile. The trial court was further focused on DYS's inability to rehabilitate J.M.J., given previous attempts and the lack of long-term care and treatment available through his nineteenth birthday, as well as the risks posed to the community at large given the serious nature of the alleged offenses. As explained above, these findings are particularly critical to finding the totality of the circumstances support certification. Indeed, the "first three factors contain some of the most critical considerations in certification," and none of them consider the juvenile's particular circumstances or background. *K.M.F.*, 668 S.W.3d at 310 (quoting *T.D.S.*, 643 S.W.3d at 527). There is no basis on which to conclude that the trial court would have reached a different certification decision had Certification Counsel retained and called an expert who could testify to J.M.J.'s particular disabilities and circumstances. *See J.N.W.*, 643 S.W.3d at 637; *see also D.L.C.*, 697 S.W.3d at 783 (finding no reasonable probability that the juvenile would not have been certified had counsel called a witness to opine

certification counsel is not raised in the trial court in a post-judgment motion, we do not treat the claim as unpreserved, as "[n]o Missouri juvenile case has adopted a plain error standard of review when a claim of ineffective assistance of counsel is raised on direct appeal." *C.R.B.*, 673 S.W.3d at 139 (citing *In the Int. of D.C.M. v. Pemiscot Cnty Juv. Off.*, 578 S.W.3d 776, 782–83 (Mo. banc 2019)). "Juveniles' claims of ineffective assistance of counsel can be addressed on direct appeal so long as the record is sufficient to allow for proper review of the claim." *D.L.C.*, 697 S.W.3d at 780 (citing *C.R.B.*, 673 S.W.3d at 138).

on how the juvenile's long history with the juvenile justice system affected his development and behaviors given the trial court's finding that every factor, particularly the first three factors, supported certification); *C.R.B.*, 673 S.W.3d at 140 (finding no reasonable probability that the juvenile would not have been certified had counsel requested a competency evaluation given the seriousness of a second allegation of murder); *K.M.F.*, 668 S.W.3d at 311 (finding no reasonable probability that the juvenile would not have been certified had counsel presented mitigating evidence regarding the juvenile's learning disability and lack of impulse control given the trial court's finding that every factor, particularly the first three factors, supported certification). Therefore, because J.M.J. has not shown how the trial court's findings on the first three critical factors were undermined by any alleged failure of Certification Counsel to call an expert, he has not proved prejudice. *See D.L.C.*, 697 S.W.3d at 783. Point Three is denied.

Conclusion

The judgment of the trial court is affirmed.

_Rebeca Navarro-McKelvey_
_____
Rebeca Navarro-McKelvey, J.

Lisa P. Page, P.J. and
Virginia W. Lay, J., concur.