George Anderson WRIGHT,
III, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–94–00155–CR.

Court of Appeals of Texas,
Tyler.

Nov. 30, 1995.

William M. House, Palestine, for appellant.

Pamela Foster, Palestine, for appellee.

HOLCOMB, Justice.

A jury convicted George Anderson Wright, III of driving while intoxicated, and the court sentenced him to one year in jail, probated for two years, and fined him $1,000. In one point of error, Wright challenges the sufficiency of the evidence to support his conviction. In the remaining points, he contends that the court erred when: (1) it allowed the State to admit a videotape of a custodial interrogation into evidence without giving him notice; (2) it allowed the State to admit any evidence obtained as a result of his arrest because the State lacked probable cause to arrest him; and (3) it allowed the State to admit proof of two DWI convictions and his driving record into evidence without offering testimony that he was the same person as the person that was named in the records. We will affirm.

In his first point, Wright challenges the sufficiency of the evidence to support the jury's finding that he drove or operated a motor vehicle while he was intoxicated. In determining the sufficiency of the evidence to support a conviction, we must use the standard set out by the United States Supreme Court in *Jackson v. Virginia* and ask whether, "after viewing the evidence in the light [most] favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 572 (1979); *Houston v. State,* 663 S.W.2d 455, 456 (Tex.Cr.App.1984). The sufficiency of the evidence test is the same in both direct and circumstantial evidence cases. *Dickey v. State,* 693 S.W.2d 386, 387 (Tex.Cr.App.1984); *Hernandez v. State,* 773 S.W.2d 761 (Tex. App.—San Antonio 1989, no pet.). To support a DWI conviction, the State had the burden to prove that Wright was intoxicated while driving or operating a motor vehicle in a public place. TEX.REV.CIV.STAT.ANN. art. 6701*l*–1 (Vernon 1995). In this case, it is undisputed that Wright was intoxicated in a public place when he was arrested. Therefore, the issue is whether testimony that established that a vehicle was being recklessly driven and when stopped Wright was sitting in the driver's seat of a motor vehicle in the middle of the street with his foot on the brake pedal, constitutes evidence that Wright was "driving" or "operating" a motor vehicle. We hold that it does. At trial, the State's first witness was Henry Brown, who testified that at approximately 8:00 p.m. on January 9, 1993, he saw an older model, dark-colored Cadillac, occupied by only one person, pull into his driveway at 2115 West Point Tap Road in Palestine, Texas. According to Brown, the driver of the car immediately backed out of his driveway and went south on West Point Tap Road. As he continued to watch the car, Brown saw it turn in and out of several driveways in the neighborhood. The driver then came back to Brown's driveway, drove approximately twenty feet onto his property and left, again heading south on West Point Tap Road. After the car returned the third time to Brown's driveway, Brown saw it go approximately twenty-five feet onto Brown's lawn. At this point, Brown ran toward the Cadillac and instructed his wife to call the police. After Brown's wife got the dispatcher on the phone, she came outside and handed the phone to her husband so that he could describe the car as it drove through the neighborhood. Brown continued to talk to the dispatcher until he saw patrol cars come from each direction on West Point Tap Road and "box in" the Cadillac. According to Brown, the driver was

the only person in the car and only one person got out of the Cadillac.

Officer Darren Goodman testified that a little after 8:00 p.m. on January 9, he was dispatched to the 2100 block of West Point Tap Road in response to a complaint of a reckless driver in a dark, older-model Cadillac. Upon arriving at the 2100 block, Goodman saw a Cadillac fitting the dispatcher's description stopped in the middle of the road with the brake lights illuminated. When he approached the car, Goodman saw one person behind the steering wheel. Goodman then activated his overhead lights. The Cadillac brake lights went off, the driver's side door opened, and Wright got out of the Cadillac.

The last witness was Officer Robert Myer, who confirmed that when he arrived at the scene, he saw a dark-colored Cadillac stopped in the middle of the street. At that time, Wright had already gotten out of the vehicle and was talking to Officer Goodman.

Wright argues that Brown was the only person who saw the car moving recklessly down the road. Wright points out that Brown never identified Wright at trial as the driver of the car. Officer Goodman identified Wright as the person who got out of the car, but he could not verify that Wright was the same person that was driving or operating the car in a reckless manner. Officer Meyer arrived after Wright got out of the car and did not witness him exerting control over the car. Wright argues that the fact situation in this case is similar to the facts in *Ballard v. State*, 757 S.W.2d 389, 391 (Tex. App.–Houston [1st Dist.] 1988, pet. ref'd), and *Reddie v. State*, 736 S.W.2d 923, 926 (Tex.App.–San Antonio 1987, pet. ref'd). In those cases, the courts held that evidence of an intoxicated person that is in the driver's seat of a parked car is not sufficient evidence to prove that the accused was driving or operating a motor vehicle while intoxicated. *Id.*

However, the facts in both *Ballard and Reddie* are distinguishable from the case before us. In *Reddie*, the vehicle was found stopped on a road outside the city limits of San Antonio. The state did not offer any evidence to show the length of time the

vehicle had been stopped, and there was no indication that the accused had driven the vehicle. Under those circumstances, the court held that the evidence was insufficient to support a DWI conviction. *Reddie*, 736 S.W.2d at 926. In *Ballard*, the defendant was found unconscious in the driver's seat of a vehicle that was parked on the shoulder of a highway with the engine running. The court held that this evidence alone was not sufficient to prove that the defendant was driving or operating a motor vehicle while he was intoxicated. *Ballard*, 757 S.W.2d at 391.

The facts in *Hernandez v. State*, 773 S.W.2d 761 (Tex.App.–San Antonio 1989, no pet.) are more analogous to the facts in this case. In *Hernandez*, the police officer was dispatched to Northeast Loop 410 in San Antonio where a vehicle was reported traveling in the wrong direction. When the officer arrived at the location several minutes later, she found a pickup stopped, facing the wrong way in the inside lane of traffic. The engine was running, the lights were on, and the accused was asleep alone in the driver's seat with his foot on the brake pedal. The court held that even though the police officer did not see the accused driving the car, the evidence was sufficient to support his DWI conviction. *Hernandez*, 773 S.W.2d at 762. Also, in *Keenan v. State*, 700 S.W.2d 12 (Tex.App.–Amarillo 1985, no pet.), a witness saw a truck stopped on a highway in a lane of traffic with its lights on and exhaust fumes coming out of the tailpipe. The only occupant of the truck was slumped toward the steering wheel. The witness went for help and returned a couple of minutes later. When a police officer arrived at the scene, the witness identified the accused as the same man that had been slumped over the steering wheel minutes before. The court held that the evidence was sufficient to prove that the accused was operating the vehicle. *Keenan*, 700 S.W.2d at 14.

Here, the dispatcher received a report that a car which fit the description of Wright's car was driving erratically in the 2100 block of West Point Tap Road. Minutes after the dispatcher relayed this information to Goodman, Goodman saw Wright in a car with his foot on the brake pedal. At the same time

this was happening, Brown watched Wright's car drive erratically up and down the street until the police came to the scene. After the police came, they boxed in the car that Brown had continuously watched. Brown saw no one else in the vehicle, and Wright was the only person who got out of the vehicle. Goodman identified Wright in the courtroom as the same person who had gotten out of the dark-colored Cadillac in the middle of the 2100 block of West Point Tap Road. Although Brown did not specifically identify Wright as the person whom he had seen driving through his neighborhood, we hold that any rational trier of fact could have found beyond a reasonable doubt that Wright drove or operated the motor vehicle. Therefore, point one is overruled.

▇ In his second point, Wright contends that the court erred when it allowed the State to admit a videotape of what he interprets as a custodial interrogation without giving him notice in compliance with section 3(a)(5). TEX.CODE CRIM.PROC.ANN. art. 38.22 § 3(a)(5) (Vernon 1995). After Goodman pulled in behind the Cadillac, he turned on a dash-mounted video camera in his patrol car. The tape showed Goodman giving Wright a field sobriety test and eventually arresting him. This videotape was introduced into evidence over Wright's objections that the State had failed to provide him a copy of the tape within twenty days of trial pursuant to section 3(a)(5) of article 38.22. TEX.CODE CRIM. PROC.ANN. art. 38.22 § 3(a)(5) (Vernon 1995). Wright acknowledges that the courts historically have not considered sobriety tests on videotape "testimonial;" therefore, the tapes do not generally constitute interrogation within the terms of article 38.22. TEX.CODE CRIM.PROC.ANN. art. 38.22 § 3(a)(5) (Vernon 1995); *Shephard v. State,* 749 S.W.2d 283, 286 (Tex.App.–Fort Worth 1988, pet. denied). However, he argues that the audio portion of this particular tape exceeds the typical sobriety test because Goodman asks him specific questions pertaining to the elements of the DWI offense. Therefore, he concludes that portions of the tape are testimonial and constitute an interrogation. In support of his position, Wright cites *Sims v. State,* in which the court held that questions asked to an accused regarding the day, time and place

that the accused last ate exceeds the limits of a sobriety test and is an interrogation. *Sims v. State,* 735 S.W.2d 913, 915 (Tex.App.–Dallas 1987, pet. ref'd). He also cites *Jones v. State,* in which the court held that audiotapes from DWI videotapes should be suppressed if the police conduct that is depicted on the tape expressly or impliedly calls for a testimonial response that is not normally incident to arrest and custody. *Jones v. State,* 795 S.W.2d 171, 176 (Tex.Cr.App.1990).

Article 38.22, section 3(a)(5), provides that:

no oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.

TEX.CODE CRIM.PROC.ANN. art. 38.22 § 3(a)(5). The courts have made a distinction between testimony that shows a defendant reciting the alphabet or performing other sobriety tests, as opposed to a defendant undergoing an interrogation by being asked whether he was driving the car, how much he had to drink, and when he last ate a meal. *Jones,* 795 S.W.2d at 176.

Here, we have examined the videotape and conclude that the information on it primarily relates to the sobriety test that Goodman gave to Wright. At the end of the sobriety test, Goodman asks Wright whether he had previously been given a breath test. Wright answered, "No." Next, Goodman asked Wright whether he would give a sobriety test in this instance, to which Wright again answered, "No." In *Bass v. State,* 723 S.W.2d 687, 691 (Tex.Crim.App.1986), the Court of Criminal Appeals specifically held that requesting a defendant in a DWI case to take a breath test was not a *custodial interrogation* for purposes of article 38.22. Therefore, we hold that the court did not err when it admitted the videotape into evidence. Point two is overruled.

▇ In his third point, Wright contends that the court erred when it allowed the State to admit any evidence obtained as a

result of his arrest or detention because the State was without probable cause to arrest him. Under this point, Wright correctly points out that to justify an officer's conclusion that a crime has been or was being committed, the officer cannot simply rely on a police broadcast or an anonymous phone call to establish probable cause. *Rojas v. State,* 797 S.W.2d 41, 44 (Tex.Crim.App. 1990). There must be additional facts available to the officer or the dispatcher which would warrant a man of reasonable caution to conclude that a crime has been or is being committed. *Colston v. State,* 511 S.W.2d 10, 12 (Tex.Crim.App.1974). Wright argues that when Goodman arrived at the scene, he had relied on information from the dispatcher that a person in a dark-colored Cadillac was seen driving erratically in the 2100 block of West Point Tap Road. Upon arrival, Goodman saw a car similar to the one that had been described parked in the middle of the road. Wright concludes that Goodman was relying exclusively on the police broadcast and had no personal knowledge that any crime had been committed when he arrived at the scene; therefore, Wright reasons that Goodman did not have probable cause to arrest him. We do not agree.

■ In *State v. Adkins,* the Court found that a tip from an informant, who advised an officer that the driver of an automobile appeared to be intoxicated and was driving with a flat tire, was sufficient to give that officer reasonable suspicion to detain that motorist. *State v. Adkins,* 829 S.W.2d 900, 901 (Tex. App.—Fort Worth 1992, no pet.). In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court stated that an officer need only have a particularized objective basis for believing that the suspect was involved in a criminal activity. Here, Officer Goodman was dispatched to go to the 2100 block of West Point Tap Road based upon a report that a person in a dark-colored Cadillac was driving recklessly. When Goodman arrived, he saw a car fitting the description in the middle of the road. As he approached the Cadillac, Goodman noticed that the brake lights were illuminated. Goodman testified that he investigated the incident further because the car was located in the road for no apparent reason. As a

safety precaution, Goodman turned on his overhead lights and watched Wright as he attempted to get out of the car. Wright appeared to be unstable and used his arms to hold onto the car for support and balance. At that point Goodman had an objective basis for believing that Wright was intoxicated. Based upon the reckless driving report of a dark-colored Cadillac on West Point Tap Road that he received, Goodman had sufficient information to connect Wright to the unusual activity and to conclude that the activity was related to a crime that authorized the investigative detention and ultimate arrest. Wright's point three is overruled.

In point four, Wright contends that the court erred during the punishment phase of the trial when it allowed the State to admit into evidence certified copies of his driving record and prior DWI judgments without any testimony that he was the same person as the person named in the documents. The State offered into evidence State's Exhibit Number Two, which was a certified copy of Wright's driving record containing, among other matters, two DWI convictions. It also contained a physical description, age, and name. Over Wright's objection, the State then offered into evidence Exhibit Number Three, which purported to be certified copies of the two DWI judgments. The court overruled Wright's objection that the exhibits were insufficient to support a finding that he was the same person as the person that had previously been convicted in the State's exhibits. After these documents were admitted, the State immediately rested. Since the State had not plead the DWIs in the information, the records were not introduced for enhancement purposes. Then Wright took the stand. During cross-examination, Wright admitted that he had been convicted of a DWI in Tyler in 1961. One of the DWI convictions that was contained in the driving record showed a 1961 DWI conviction in Smith County.

■ For a properly authenticated copy to be relevant, the state must offer sufficient evidence to support a finding that the defendant on trial is the same person that has previously been convicted *and there is no requirement that identification precedes admissibility. Rosales v. State,* 867 S.W.2d 70,

72 (Tex.App.—El Paso 1993, no pet.). However, when an accused admits a prior offense or conviction, his testimony is sufficient to connect him with the prior conviction, and the state need not offer any further evidence to support this issue. *Rascon v. State,* 496 S.W.2d 99, 102 (Tex.Crim.App.1973). Therefore, Wright's admission of a 1961 DWI conviction in Smith County, which was one of the offenses in his driving record, along with his name, age, and physical description in the driving record, could have caused a rational finding by the trial court that he is the same person named in the driving record. *Rosales,* 867 S.W.2d at 73.

■ Even if the exhibits were improperly admitted, we hold that the error, if any occurred, was harmless beyond a reasonable doubt. *Bird v. State,* 692 S.W.2d 65, 70 (Tex.Crim.App.1985). Under Rule 81(b)(2), we must reverse a judgment unless we find beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Tex.R.App.P. 81(b)(2). The jury found Wright guilty of first offense driving while intoxicated. The statute in effect at the time provided that the court could assess punishment for a first-time offense as: (1) a fine of not less than $100 nor more than $2,000 and, (2) confinement in jail for a term of not less than 72 hours or more than two years. Tex.Rev.Civ.Stat.Ann. art. 6701*l* –1 (Vernon 1986). Wright was sentenced to only one year in jail, probated for two years, and fined $1,000 when it had uncontroverted evidence he had a previous DWI conviction. The court also allowed Wright to attend a DWI school rather than suspending his driver's license. The record is completely void that it was emphasized by the State or that the court even considered Wright's prior DWI offenses when it rendered its judgment. Therefore, any error made by the court in admitting the State's Exhibits Two and Three was harmless and did not contribute to his punishment. Wright's fourth point is overruled.

The judgment of the trial court is **affirmed.**