Opinion issued May 13, 2010




     











In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00011-CR




JOHNNY RUIZ, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause No. 1143171




MEMORANDUM OPINION

          A jury found appellant, Johnny Ruiz, guilty of intoxication manslaughter and
assessed punishment at 22 years’ imprisonment.


 In three issues, appellant argues
that the trial court erred (1) in denying his request for an instruction on criminally
negligent homicide; (2) in admitting evidence of his prior conviction for driving
while intoxicated; and (3) in overruling his objection to testimony of his gang
affiliation.
          We affirm.
BACKGROUND
          On December 13, 2006, appellant borrowed a car from his sister and then
called his former common-law wife,


 Angela Sanchez, and asked for permission to
pick up two of their children, three-year-old Marissa and Johnny (Baby Johnny), who
had turned two years old two days earlier, from their babysitter. With the approval of
Sanchez, appellant picked the children up from the babysitter, agreeing to return them
to her later that afternoon. Appellant also checked his younger brother, Jose, out
from school, and the four of them went to McDonald’s.
          Around 4:00 that afternoon, appellant was driving his sister’s white Mazda,
with the three children in it, on Beltway 8 (the Beltway), in Harris County, Texas. 
Witnesses testified that appellant was driving well in excess of the posted speed limit
in heavy traffic, passing other vehicles so quickly that he made them shake, tail-gating, and hanging out of the window while driving with one hand. After swerving
from side to side behind a Cadillac, appellant exited to the feeder road at JFK at
speeds up to 120 miles per hour. As a car in front of appellant’s car slowed to make
a right-hand turn, appellant veered across all three lanes of the feeder road and headed
back towards the Beltway. The car struck a curb, went airborne over the retaining
wall, hit the Beltway guardrail, spun, crashed into a pickup truck, and caused other
cars to crash into each other. As appellant’s car was coming to rest against the
outside concrete barrier, appellant’s daughter, Marissa, was ejected from the car and
landed on the Beltway. After the car stopped spinning, appellant and Jose exited the
smoking car. 
          After exiting the car, appellant walked around in confusion for a few moments.
Two to three minutes later, appellant’s car burst into flames. Appellant grabbed
Marissa and ran back to his burning car. He indicated that there was another child
inside the car and wanted someone to save him, but the car was engulfed in flames. 
Baby Johnny’s charred body was found in the back seat of the burned-out car and
identified from a DNA sample.
          Marissa was bleeding profusely from a deep laceration underneath her chin and
was suffering from a bump on her head. Appellant eventually released her to
paramedics, and a Life Flight helicopter transported her to Hermann Hospital. An
ambulance transported Jose to a hospital. After releasing his daughter to the
paramedics, appellant was placed in the back of a police car but was not formally
arrested.
          Officer R. Breiding of the Houston Police Department (HPD) was dispatched
to the scene and arrived around 5:20 p.m. due to traffic congestion. He noted that
appellant had glassy, blood-shot eyes, lack of balance, and the odor of alcohol on his
breath. Officer Breiding asked Officer C. Crum to evaluate appellant for intoxication.
Officer Crum spoke with appellant and noticed that appellant and the police car in
which appellant had been placed smelled of alcohol. Appellant appeared very
emotional and had thick speech and poor balance. Appellant admitted to Officer
Crum that he had “had a beer.” Appellant refused to take a field sobriety test, but he
consented to a Horizontal Gaze Nystagmus (HGN) test. Officer Crum observed all
six clues of intoxication on the HGN test. After administering the HGN test, Officer
Crum formally arrested appellant. Appellant arrived at the police station around 6:30
p.m. 
          Upon his arrival at the police station, appellant received his statutory warnings,
and the officers asked him to submit to a breath test to determine the concentration
of alcohol in his blood. Appellant refused to provide a breath sample, so the officers
took him to Ben Taub Hospital for a mandatory blood test. Appellant’s blood test,
taken at approximately 7:20 p.m., showed an alcohol concentration of 0.109 grams
of alcohol per 100 milliliters of blood.
          Appellant was charged with intoxication manslaughter. The State’s crime lab
expert testified at trial that, through extrapolation, appellant’s blood alcohol
concentration at the time of the accident was between 0.13 and 0.17, approximately
double the legal limit of 0.08. 
           Appellant asked the trial court for a jury charge on criminally negligent
homicide as a lesser-included offense of the offense of intoxication manslaughter
with which he was charged, but the trial court denied appellant’s motion. The jury
convicted appellant of intoxication manslaughter.
          During the punishment phase of appellant’s trial, the State introduced evidence
of appellant’s prior convictions. Deputy J. Ortiz testified that, through fingerprint
analysis, he could verify that most of the judgments and jail cards presented by the
State belonged to appellant. Appellant objected, however, to State’s Exhibit 58, a
judgment for a 2002 conviction for Driving While Intoxicated (DWI) from Hidalgo
County, arguing that while the judgment had a place for a fingerprint on it, there was
no fingerprint on the judgment. Appellant also noted that this judgment did not have
a corresponding jail card with a fingerprint that could connect the judgment to him. 
He argued that because there was no fingerprint evidence on this conviction that
could connect the judgment to him, the State could not prove that he committed this
offense. Appellant also argued that evidence of this conviction should not be
admitted because he did not have counsel during that proceeding. The trial court
admitted the evidence of the prior convictions, including the conviction for DWI to
which appellant had objected.
          Also during the punishment phase, the State called Deputy M. Squyers of the
Harris County Sheriff’s Department, a gang expert. Prior to trial, the trial court had
entered an order granting the State’s motion to photograph appellant. Deputy Squyres
met with appellant, took photographs of his tattoos, and interviewed him. When the
State called Deputy Squyres to testify during the punishment phase of appellant’s
trial, appellant asked “to take him on voir dire outside the presence of the jury.”
Appellant’s voir dire established that Deputy Squyres interviewed appellant after he
was arrested for intoxication manslaughter in this case without notice to his counsel
and without his counsel’s being present. The trial court sustained appellant’s
counsel’s objection to the admission of testimony about the interview, but it permitted
Deputy Squyres to testify to appellant’s gang affiliation based on the photographs of
the tatoos. 
           Deputy Squyers testified that he had extensive training relating to gangs, that
he had conducted a custodial interview with appellant, and that he had photographed
appellant’s tattoos. He then testified that he interpreted appellant’s tattoos to be gang
tattoos and that the gangs were located in Houston. The jury found the enhancement
paragraph for burglary of a habitation true and assessed appellant’s punishment at 22
years’ imprisonment.FAILURE TO GRANT INSTRUCTION
          In his first point of error on appeal, appellant argues that the trial court
reversibly erred in denying his request for an instruction on criminally negligent
homicide as a lesser-included offense of intoxication manslaughter. 
          The Texas Code of Criminal Procedure defines a lesser-included offense as
follows: 
An offense is a lesser-included offense if:
 
(1) it is established by proof of the same or less than all the facts
required to establish the commission of the offense charged;
 
(2) it differs from the offense charged only in the respect that a less
serious injury or risk of injury to the same person, property, or public
interest suffices to establish its commission;
 
(3) it differs from the offense charged only in the respect that a less
culpable mental state suffices to establish its commission; or
 
(4) it consists of an attempt to commit the offense charged or an
otherwise included offense.
 
Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006). 
          To determine whether a defendant is entitled to an instruction on a lesser-included offense, the court conducts a two-pronged test. See Hall v. State, 225
S.W.3d 524, 534–36 (Tex. Crim. App. 2007). The first step in determining whether
an offense is a lesser-included offense of an alleged offense is a question of law. Id.
at 535. It requires that the court compare the elements of the offense alleged in the
indictment or information with the elements of the potential lesser-included offense. 
Id. at 535–36. The second step asks whether there is evidence that supports giving
the lesser-included-offense instruction to the jury. Id. at 536. “A defendant is
entitled to an instruction on a lesser-included offense where the proof for the offense
charged includes the proof necessary to establish the lesser-included offense and there
is some evidence in the record that would permit a jury rationally to find that if the
defendant is guilty, he is guilty only of the lesser-included offense.” Id. (quoting 
Bignall v. State, 887 S.W.2d 21, 23 (Tex. Crim. App 1994)). 
          A person commits the offense of intoxication manslaughter if he operates a
motor vehicle in a public place while intoxicated and, by reason of that intoxication,
causes the death of another by accident or mistake. Tex. Penal Code Ann. § 49.08
(Vernon 2003). A person commits the offense of criminally negligent homicide if he
“causes the death of an individual by criminal negligence.” Id. § 19.05 (Vernon
2003). A person is criminally negligent with respect to the circumstances
surrounding his conduct when “he ought to be aware of a substantial and unjustifiable
risk that the circumstances exist or the result will occur.” Id. § 6.03(d) (Vernon
2003). 
          This Court and others have held that criminally negligent homicide is not a
lesser-included offense of intoxication manslaughter because criminally negligent
homicide requires proof of a culpable mental state while intoxication manslaughter
does not. See Wooten v. State, 267 S.W.3d 289, 305 (Tex. App.—Houston [14th
Dist.] 2008, pet. ref’d); Gowans v. State, 995 S.W.2d 787, 792–93 (Tex.
App.—Houston [1st Dist.] 1999, pet ref’d); Reidweg v. State, 981 S.W.2d 399, 406
(Tex. App.—San Antonio 1998, pet. ref’d).
          Appellant, however, cites Ormsby v. State, 600 S.W.2d 782 (Tex. Crim. App.
1979), as support for his argument that criminally negligent homicide is a lesser-included offense of intoxicated manslaughter. See id. at 785 (holding that criminally
negligent homicide was lesser-included offense of former section 19.05 of Texas
Penal Code, governing involuntary manslaughter, when defendant fell asleep while
operating motor vehicle in state of exhaustion after drinking three beers on empty
stomach and crossed center line, striking car and killing passenger). However, this
Court has held that because of the legislature’s subsequent changes to the text of the
law, Ormsby no longer applies. See Gowans, 995 S.W.2d at 792–93 (noting that
former section 19.05 was moved to section 49.08, renamed “intoxication
manslaughter,” and made strict-liability crime and holding that “[b]ecause criminally
negligent homicide requires proof of a negligent mental state, it cannot be a lesser
included offense of . . . intoxication manslaughter, which [now] has no culpable
mental state”). Therefore, we again conclude that “Ormsby’s holding that criminally
negligent homicide is a lesser-included offense of intoxication manslaughter is no
longer applicable.” See id.
          Because we conclude that appellant did not meet the first prong of Hall, we
need not consider Hall’s second prong. See Hall, 225 S.W.3d at 536. 
          We overrule appellant’s first point of error.
EVIDENTIARY COMPLAINTS
          In his second point of error, appellant argues that the trial court erred by
admitting evidence of his prior conviction for driving while intoxicated in the
punishment phase of his trial. In his third point of error, he argues that the trial court
erred in overruling his objection to testimony of his gang affiliation and admitting the
evidence in the punishment phase.
          A trial court’s admission of evidence is reviewed under an abuse of discretion
standard. Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). A trial court
abuses its discretion if it acts arbitrarily or unreasonably, without reference to any
guiding rules or principles. Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim.
App. 1990). When considering a trial court’s decision to admit or exclude evidence,
we will not reverse a trial court’s ruling unless it falls outside the “zone of reasonable
disagreement.” Green v. State, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996); Burden
v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).
A.      Admission of Prior Conviction
          In his second point of error, appellant argues that, during the punishment phase,
the trial court erred by allowing the State to admit into evidence a judgment and a
sentence reflecting that appellant had previously received a probated sentence in
Hidalgo County for driving while intoxicated.


 
          In the punishment phase of his trial, appellant objected to the admission of his
prior conviction for DWI on the ground that he was not represented by counsel and
that the State could not show that the judgment belonged to him because there was
no fingerprint evidence to connect him to the judgment. On appeal, appellant argues
that because there was no fingerprint on the judgment and there was no corresponding
jail card, the prior conviction for DWI should not have been admitted because the
State could not show that the conviction belonged to appellant. 
          To establish that a defendant has been convicted of a prior offense, the State
must prove beyond a reasonable doubt that a prior conviction exists and that the
defendant is linked to that conviction. Flowers v. State, 220 S.W.3d 919, 921 (Tex.
Crim. App. 2007); see also Garner v. State, 864 S.W.2d 92, 97 (Tex. App.—Houston
[1st Dist.] 1993, pet. ref’d) (“The State may prove a prior conviction by any of several
methods, one of which is by the introduction of certified or otherwise properly
authenticated copies of the judgment and sentence and records of the Institutional
Division of the Texas Department of Criminal Justice or a county jail that includes
fingerprints of the accused, supported by expert testimony identifying the fingerprints
of the accused with known prints of the defendant.”). However, “[t]here is no ‘best
evidence’ rule in Texas that requires that the fact of a prior conviction be proven with
any document, much less any specific document.” Flowers, 220 S.W.3d at 921. 
Thus, the State may prove that a defendant has been convicted of an offense in
several ways. Id. at 921–22.
          Here, appellant objected to the introduction of State’s Exhibit 58, a judgment
from Hidalgo County, dated July 10, 2000, convicting “Johnny Ruiz” of driving while
intoxicated. Appellant objected that while the judgment had a designated place for
a fingerprint, it did not have a fingerprint on it, there was no corresponding jail card,
and the identifiers at the bottom of the first page of the judgment did not match with
“identifiers that are on the jail cards [from other sentences].” The judgment to which
appellant objected includes his name, sex, date of birth, and social security number.
It also includes an address that has been scratched out and replaced by a second
handwritten address. The information pertaining to appellant’s name, sex, date of
birth, and social security number is identical to information on jail cards for offenses
committed in March 2002 and September 2004 that do have appellant’s fingerprint
on them. Appellant did not object to the admission of either of these jail cards, and
Deputy Ortiz testified that the fingerprints from the March 2002 and September 2004
offenses match those of appellant. Moreover, during the punishment phase, appellant
conceded that he had been convicted six times for various felony offenses and that
he had a conviction for DWI. 
          In viewing the evidence in the light most favorable to the trial court’s ruling,
we hold that the trial court’s ruling was “within the zone of reasonable disagreement,”
and therefore, we conclude that the trial court did not abuse its discretion in admitting
evidence of appellant’s prior conviction for driving while intoxicated. Green, 885
S.W.2d at 101; Flowers, 220 S.W.3d at 921; Wright v. State, 932 S.W.2d 572, 576
(Tex. App.—Tyler 1995, no pet.) (holding that accused’s admission is sufficient to
connect him with prior conviction and State need not offer further evidence). 
          We overrule appellant’s second point of error.
B.      Admission of Testimony about Gang Affiliation
          In his third point of error, appellant argues that Deputy Squyres’ entire
testimony regarding appellant’s gang membership “should have been disallowed”
because his knowledge was obtained through a violation of appellant’s Sixth
Amendment right to counsel. 
          Appellant argues,
It is true that the trial court would not allow [Deputy Squyres] to testify
to answers Appellant gave but limited his testimony to expressing an
opinion based on Appellant’s tattoos. It was clear from the hearing
outside the presence of the jury[,] however[,] that the inadmissible
interview constituted a great part of the basis of Squyres’ opinion. The
violation of Appellant’s Sixth Amendment right to counsel was so
inextricably intertwined with the other evidence of gang activity that the
entire testimony should have been suppressed.
 
          On November 14, 2007, prior to trial, the trial court entered an order granting
the State’s motion to photograph appellant. Deputy Squyres, a gang expert, met with
appellant, took photographs of his tattoos, and interviewed appellant. When the State
called Deputy Squyres to testify during the punishment phase of appellant’s trial,
appellant asked “to take him on voir dire outside the presence of the jury.”
          Appellant’s voir dire established that Deputy Squyres interviewed appellant
after he was arrested for intoxication manslaughter in this case without notice to his
counsel and without his counsel’s being present. Deputy Squyres also took
photographs pursuant to the court order, which were discussed during appellant’s voir
dire. The trial court also questioned Deputy Squyres regarding the subject to which
he expected to testify. Appellant then entered the following objection:
Your Honor, first, I’d like to . . . make an objection to the Court that,
obviously, this custodial interrogation—none of that is going to be
admissible. I mean he’s obviously in custody. He’s obviously got a
lawyer. His lawyer isn’t there. He’s not given his Miranda warnings;
doesn’t even comply with Article 38.22. It’s not videoed and recorded. 
It’s not in paper and recorded. Anything that he gets as a derivative
source of that is illegally obtained information, shouldn’t be coming in
before the jury, so anything that he gets as a result of seeing the tattoos
and the custodial interview of [appellant] should be excluded.
 
          The trial court then heard arguments from the State. The State argued that
Deputy Squyres could “give an opinion on gang membership based on the tattoos.” 
The trial court then asked, “You’re not going in any way into any statement made by
the Defendant to this officer?” The State responded, “Just that he photographed those
tattoos and, based on those tattoos, does he have an opinion.” The trial court then
ruled, “I’m going to find that admissible: that proffer she just made of what she
intends to go into. But I agree with [appellant’s counsel] that any statements made
as a result of custodial interrogation are not admissible.” The State emphasized to
Deputy Squyres that he was not to testify about any statements made during the
interview, even if it was to answer a question asked by the State, and the following
exchange then occurred:
[the State]:   Just for purposes of the record, I’d like to go ahead and
offer State’s Exhibit 72—it’s the State-ordered
photographing of [appellant]—just for the purpose of the
record, so that the appellate court knows that this was an
Order on a motion that was granted by the Court back on
November the 14th, 2007, before the photographs were
taken.
 
[appellant]:  I don’t have an objection to that. If his testimony is going
to be just about the tattoos, then I would ask that he not
even be able to tell the jury, “I had an interview with
[appellant],” so they can’t surmise that this evidence is
coming from the interview.
 
[trial court]: Just that you met with [appellant].
 
[the State]:   During the course of the interview, he did advise me that
he received additional information from additional sources
about [appellant’s] gang membership in a second gang, the
North Side Raiders. I believe 703 also allows for him to
give an opinion on the basis of information received from
other sources if it’s the type of information that experts
generally rely on . . . .
 
[appellant]:  If I may respond to that, Judge, . . . . [T]he rules can’t
authorize [Deputy Squyres] to give an opinion . . . based on
what [appellant] said that violates his right to an attorney
or his Miranda rights. I mean the Rules don’t authorize the
violation of the Constitution.
 
[trial court]: I’m not inclined to allow you to go into that; but, certainly,
if any witness takes the stand, you’ve got a good-faith basis
to ask him about that, if they know that he was in that
gang. But I don’t want you to get into it through this
witness.
 
Deputy Squyres then testified before the jury about his expertise regarding gangs and
the types of symbols and tattoos gang members commonly have to affiliate
themselves with their gang. Deputy Squyres testified that he took the photographs
of appellant’s tattoos, and the State offered the photos into evidence. Appellant’s
counsel approached the bench and objected:
[appellant]:  Judge, I would object to these pictures and any further
testimony coming from this witness that [appellant] is
presently a member of this gang, therefore trying to
implicate his involvement in murders, narcotics, or any of
those things that he said, in that the highly prejudicial
nature of that speculation, as it applies to [appellant],
outweighs any probative value as to this [appellant]. 
Object to his further testimony. It’s also his opinion that
he’s currently a member or just that he—
 
[the State]:   That he is or was a member of. I think that’s probably the
fairest—I mean his opinion is going to be that it is based
on everything that he knows, but I know I’m not allowed
to go into some of this underlying data.
 
[trial court]: I find the prejudicial effect of these photographs is
outweighed by their probative value if you couch it in
terms that he either is or was a member of this gang. All
right, I’m going to overrule your objections.
 
The trial court then admitted the photographs, and Deputy Squyres testified that,
based on his observation of the tattoos on appellant, appellant was a member of the
Houston Tango Blast criminal street gang. 
          To preserve an issue for appellate review, the trial record must reflect that
appellant made a timely, specific objection and obtained a ruling. Tex. R. App. P.
33.1(a)(1)(A); Tex. R. Evid. 103(a)(1); Layton v. State, 280 S.W.3d 235, 238–39
(Tex. Crim. App. 2009). Appellant must object each time inadmissible evidence is
offered unless he obtains a running objection or makes an objection outside the
presence of the jury to all the testimony he deems objectionable. Martinez v. State,
98 S.W.3d 189, 193 (Tex. Crim. App. 2003). The issue raised on appeal must
comport with the objection made at trial, and the trial court must have an opportunity
to rule on the issue; otherwise, the issue has not been preserved for review on appeal. 
Heidelberg v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004). When a defendant
affirmatively states that he has “no objection” to the admission of the evidence during
trial, he waives the right to complain about the trial court’s ruling on appeal. Holmes
v. State, 248 S.W.3d 194, 196 (Tex. Crim. App. 2008).
          Appellant’s initial objection was that the interview violated his Sixth
Amendment right to counsel and therefore nothing resulting from that interview
should be admitted. He did not object that testimony based on the photos of the
tattoos violated appellant’s right to counsel. Instead, appellant’s counsel expressly
affirmed that he had no objection to the admission of Exhibit 72, the State-ordered
photography of the tattoos, and he requested only that the witness who was to testify
that the tattoos evidenced appellant’s gang affiliation not be allowed to testify that he
interviewed appellant. The trial court allowed Deputy Squyres to testify that he took
the photographs of the tattoos and to give his opinion on appellant’s gang
membership based on the tattoos, but it ruled that “any statements made as a result of
custodial interrogation are not admissible.” Deputy Squyers, did not testify at trial
that he had interviewed appellant. On appeal, appellant argues that “Squyers’ entire
testimony should have been disallowed” because “Squyers interview of appellant . . .
was a clear violation of Appellant’s Sixth Amendment right to counsel.” He admits,
however “It is fine that the trial court would not allow [Squyers] to testify to any
answers Appellant gave but limited his testimony to expressing an opinion based on
Appellant’s tattoos.” Id. Appellant admitted he had no objection to testimony based
on the tattoos, and he has presented no argument or authority that such testimony is
inadmissible. We conclude that appellant affirmatively waived any right to complain
on appeal that Deputy Squyres’ testimony regarding appellant’s tattoos was
inadmissible or violated the Sixth Amendment. See Holmes, 248 S.W.3d at 196. 
          Appellant subsequently objected to the State’s offering any evidence of his
membership in a second gang, and he objected when the photographs were offered
before the jury on the ground that they were unfairly prejudicial, but he made no
further objection before the trial court that Deputy Squyres’ opinions should not be
admitted because of a violation of appellant’s Sixth Amendment right to counsel.
Deputy Squyers did not testify about appellant’s membership in the second gang, and,
on appeal, appellant does not argue that the photographs of the tattoos were unfairly
prejudicial. Therefore, appellant’s later objections do not comport with or preserve
the Sixth Amendment complaint raised on appeal. See Heidelberg, 144 S.W.3d at
537. We conclude that appellant failed to preserve his third point of error.
          Appellant has made no showing that the trial court abused its discretion in
admitting Deputy Squyers’ testimony based on appellant’s tattoos. 
          We overrule appellant’s third point of error.CONCLUSION
          We affirm the judgment of the trial court.



Evelyn V. Keyes
                                                     Justice


Panel consists of Justices Keyes, Sharp, and Massengale.
Do not publish. Tex. R. App. P. 47.2(b).